UNITED STATES of America,
Plaintiff–Appellee,

v.

James E. CAMPBELL, Defendant–
Appellant.

No. 97–5593.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 26, 1998.

Decided Feb. 17, 1999.

Rehearing Denied March 29, 1999.

Harold B. McDonough, Asst. U.S. Atty. (argued and briefed), Nashville, TN, for Plaintiff–Appellee.

Sumter L. Camp, Asst. Federal Public Defender (argued and briefed), Nashville, TN, for Defendant–Appellant.

---

* The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation.

1. Fed.R.Crim.P. 32.1(b) states:
 A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release upon the per-

Before: BATCHELDER and MOORE, Circuit Judges; SMITH,* District Judge.

## OPINION

MOORE, Circuit Judge.

Defendant Campbell appeals the decision of the district court, which held that it lacked discretion under this court's prior remand to reconsider the quantity of drugs for which Campbell was held accountable despite a purported change in the Sentencing Guidelines. The district court held that the remand of this court limited it solely to the reconsideration of the fine imposed on Campbell. For the reasons stated below, we **AFFIRM**.

## I. FACTS AND PROCEDURE

A jury convicted James Campbell in 1990 of distribution of cocaine and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 845a, and 846. The district court sentenced Campbell to 293 months in prison and eight years of supervised release and imposed a fine of $100,000. This court affirmed the conviction and sentence. *See United States v. Campbell,* No. 90–5579, 1991 WL 224103 (6th Cir.1991) (unpublished opinion).

Two years later, the warden of Campbell's prison, along with the Probation Office, suggested to the district court that Campbell would benefit if the court declared his fine due and payable immediately. *See* Joint Appendix ("J.A.") at 67–69. In May of 1993 the district court, authorized by FED. R.CRIM. P. 32.1(b),[1] and over Campbell's objection, entered an order to that effect. J.A. at 75. The order suspended interest on the fine until thirty days after Campbell's release.

The fine was calculated using erroneous information that Campbell possessed certain valuable assets. *See United States v. Camp-*

son's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected. An extension of the term of probation or supervised release is not favorable to the person for the purposes of this rule.

*bell,* No. 95–5856, 1995 WL 758468, *1 (6th Cir.1995) (unpublished opinion). Campbell, over his objection, was placed within an "inmate financial responsibility program" from which inmates make fine payments through a federal work program. *Id.* Furthermore, interest was added to his fine despite the district court's contrary order. At the rate of interest charged, Campbell's fine would have exceeded one million dollars by the time of his release.

Campbell appealed the district court's order, and this court reversed and remanded for a hearing on Campbell's available assets and his financial situation at the original sentencing hearing. This court found the placement of Campbell in the financial program and the charge of interest on the fine, which would amount at the time of his release to approximately one million dollars, to be erroneous. *Id.*

On remand Campbell sought to expand the scope of resentencing by arguing that amendments to Sentencing Guideline § 1B1.3 altered the previous calculation of drug quantity and that his sentence should be modified accordingly. The district court found that the scope of the remand prevented it from considering any issues other than the proper assessment of the fine. Campbell appealed from that decision.

## II. ANALYSIS

### A. The Mandate Rule and Resentencing

■ The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals. Under 28 U.S.C. § 2106 the courts of appeals have broad discretion to issue general or limited remands.[2] *See United States v. Moore,* 131 F.3d 595, 597 (6th Cir.1997); *United States v. Garafano,* 61 F.3d 113, 116 (1st Cir.1995) (interpreting § 2106 to "allow appellate courts the flexibility to adapt their mandates to the particular problem discerned on appeal and to provide an efficient

and sensible solution"). Traditionally, the mandate rule instructs that the district court is without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand. *See United States v. Hicks,* 146 F.3d 1198, 1200 (10th Cir.1998) (mandate rule "generally requires trial court conformity with the articulated appellate remand" (citation omitted)).

■ Remands, however, can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. *See, e.g., Moore,* 131 F.3d at 598 ("[A] limited remand constrains the district court's resentencing authority to the issue or issues remanded."). General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand. *Id.* at 597.

■ In essence, the mandate rule is a specific application of the law-of-the-case doctrine. *See Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.), *cert. denied,* 506 U.S. 841, 113 S.Ct. 125, 121 L.Ed.2d 80 (1992) (explaining that "the trial court may consider those issues not decided expressly or impliedly by the appellate court or a previous trial court"); *United States v. Bell,* 988 F.2d 247, 251 (1st Cir.1993). Under the doctrine of the law of the case, determinations of the court of appeals of issues of law are binding on both the district court on remand and the court of appeals upon subsequent appeal. *See United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994).

■ The courts of appeals differ on their approach to remands for resentencing under the Sentencing Guidelines. A majority of the circuits that have spoken on this issue, including this one, follow a basic rule that a district court can review sentencing matters de novo unless the remand specifically limits the lower court's inquiry. *See Moore,* 131

---

**2.** 28 U.S.C. § 2106 states:

 The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it

for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

F.3d at 598; *United States v. Caterino*, 29 F.3d 1390, 1394–95 (9th Cir.1994); *United States v. Cornelius*, 968 F.2d 703 (8th Cir. 1992); *United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Sanchez Solis*, 882 F.2d 693, 699 (2d Cir.1989). The policy underlying the presumption of de novo resentencing is to give the district judge discretion to consider and balance all of the competing elements of the sentencing calculus.

A minority of circuits disagrees with the de novo consideration on resentencing approach. These circuits view de novo consideration of sentencing upon remand as giving the defendant an unwarranted "second bite at the apple." *See United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir.) ("specifically reject[ing] the proposition that all resentencing hearings following a remand are to be conducted *de novo* unless expressly limited by the court in its order of remand"), *cert. denied*, —— U.S. ——, 119 S.Ct. 622, 142 L.Ed.2d 561 (1998); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir.1996) (rejecting any previous Seventh Circuit case law implying "that a remand limits the issues open to consideration on remand only if the opinion or order directing it so states"). The explanation of the courts of appeals subscribing to this approach is that every remand, by its nature, limits the district court to review of only those issues which led the appellate court to order the remand. *See Marmolejo*, 139 F.3d at 531 (holding that "[t]he fact that the appellate court did not expressly limit the scope of the remand order did not imply that a full blown sentencing hearing was permissible for a second time"). In these circuits the courts of appeals need not explicitly state that the remand is so limited. One reason underlying this approach, in addition to preventing the defendant from having two chances at sentencing, appears to be avoiding multiple appeals and the unnecessary prolonging of a case. *See id.* (stating "[i]t serves both justice as well as *judicial economy* to require a defendant to raise all relevant and appealable issues at the original sentencing" (emphasis added)).

This court has recognized the inherent problems that arise as a result of multiple appeals and protracted litigation. *See, e.g., Moore*, 131 F.3d at 599 (hearing the third appeal in the same case). Courts following the de novo approach to resentencing are not without medicine to treat this epidemic. The point of the limited remand is to inform the district court that a discrete issue has caused the need for review, but that complete reconsideration on resentencing is unnecessary and unwarranted. Such practice, if properly undertaken, not only can significantly expedite the district court's future work on the case, but also can substantially limit the possibility that this court will be confronted repeatedly with the same defendant, and the same sentence. "While we recognize that this court has in the past and will continue in the future to issue general remands, there are times when judicial economy favors limited remands." *Id.*

No case law from this circuit clearly sets forth universally applicable standards for determining whether a remand should be construed as limited or general. Although the particular intricacies of each case will influence such a determination, this court has established relevant principles.

■ In *United States v. Moored*, 38 F.3d 1419 (6th Cir.1994), this court articulated the standard for evaluating remands as "whether this court's mandate to the district court was so narrow in scope as to preclude the district court from considering [a particular] issue." *Id.* at 1421. The first question the district court faces when confronted with a remanded case is that of determining what part of this court's mandate is intended to define the scope of any subsequent proceedings.[3] The

---

3. Amended Sixth Circuit Internal Operating Procedure 41 states:

> The mandate is the document by which this Court relinquishes jurisdiction and authorizes the originating district court or agency to enforce the judgment of this Court. The mandate issues 21 days after the entry of judgment and consists of a certified copy of the original judgment, a copy of any opinion and any directions concerning costs.

6TH CIR. I.O.P. 41 (effective December 1, 1998). This is in accord with amended FED R.APP. P. 41(a), which states that "[u]nless the court directs that a formal mandate issue, the mandate

relevant language could appear anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language. It is important to note, however, that individual paragraphs and sentences must not be read out of context.

For example, in *United States v. Jennings*, 945 F.2d 129 (6th Cir.1991) ("*Jennings I* "), upon reviewing whether the district judge had correctly measured the amount of methamphetamine in a crock pot, this court held, "[b]ecause the record is not adequately developed with respect to the contents of the Crockpot, we feel that remand is necessary in order for the district court to conduct an evidentiary hearing on this issue." *Id.* at 137. This court upon subsequent review held that its remand did not prevent the district judge from reconsidering prior drug production at the resentencing. *See United States v. Jennings*, 83 F.3d 145, 151 (6th Cir.) ("*Jennings II* "), *as amended on denial of reh'g and reh'g en banc*, 96 F.3d 799 (6th Cir.), *cert. denied sub nom. Stepp v. United States*, 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996) ("*Jennings II* "). The rest of the initial appellate opinion made this result clear, including language that this court was "remand[ing] this case to the district court for resentencing." *Jennings I*, 945 F.2d at 136.

This court in its opinion in *Jennings I* gave a reasoned explanation for its remand, which certainly restrains the district court under the mandate rule. The district court may not proceed in a manner inconsistent with the opinion or order directing the remand. Not all reasoned explanations, however, qualify as limited remands. In *Jennings I* this court did focus on a discrete issue causing concern and ordered a hearing related thereto; nonetheless we generally remanded for resentencing. The *Jennings I* panel vacated the original sentence because of an unsupported calculation of drug quantity, but no language in the opinion disturbed the general principle of de novo consideration upon resentencing. Indeed, the facts of *Jennings I*

support this general principle. The relevant conduct at issue had no effect on the sentence at all until recalculation of the drug quantity. As a result, sentence enhancement under the relevant-conduct section was proximately related to the calculation of drug quantity. Allowing the district court to consider issues not discussed on appeal because of a change in one or more factors of the sentencing calculus is precisely the reason for the general rule of de novo consideration on resentencing.

■ A limited remand must convey clearly the intent to limit the scope of the district court's review. In *Moore II*, this court vacated an 18 U.S.C. § 924(c)(1) conviction in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *See United States v. Moore*, 131 F.3d 595, 597 (6th Cir. 1997) ("*Moore III* "). After the government on remand dismissed the § 924(c)(1) count, the district judge applied a two-level enhancement for possession of firearms during a drug crime. *Id.* This court found this enhancement beyond the scope of the remand and therefore error. The remand had read:

> We therefore VACATE Moore's section 924(c)(1) conviction and REMAND for further proceedings, in which both parties can have the opportunity to focus on the facts and law relevant to proving that Moore used or carried a firearm during and in relation to his drug trafficking offense. We adhere to our previous opinion in all other respects.

*United States v. Moore*, 76 F.3d 111, 114 (6th Cir.1996) (*Moore II* ).

■ The court in *Moore II* articulated explicitly its reasons for remand and the scope of the remand. Although the last sentence was relevant to the holding that our remand was limited, this court need not always write that it otherwise adheres to its previous opinion to limit the mandate. The key is to consider the specific language used in the

consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs." (effective December 1, 1998). "While a mandate can be a formal order, it usually consists of nothing more than a certi-

fied copy of the judgment and copies of any opinion and direction as to costs that the court may have issued." 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3987, at 687 (1996).

context of the entire opinion or order. However, "[i]n the absence of an explicit limitation, the remand order is presumptively a general one." *Moore III,* 131 F.3d at 598.

The goal of achieving judicial economy through the use of limited remands becomes futile if appellate court drafting imprecision too frequently results in parties appealing the scope of the remand itself. The purpose of the opinion and order is to inform and instruct the district court and the parties and to outline the future intended chain of events. It is the job of the appellate court adequately to articulate instructions to the district court in the remand.

 Consequently, to impose a limited remand, an appellate court must sufficiently outline the procedure the district court is to follow. The chain of intended events should be articulated with particularity. With sentencing issues, in light of the general principle of de novo consideration at resentencing, this court should leave no doubt in the district judge's or parties' minds as to the scope of the remand. The language used to limit the remand should be, in effect, unmistakable.

The sheer number of issues causing remand can affect this process. Calculation of a sentence under the Sentencing Guidelines requires a balancing of many related variables. These variables do not always become fixed independently of one another. *See Jennings II,* 83 F.3d at 151 (recognizing that recalculation of drug quantity altered the prior determination of another variable, previous drug production). When this court issues a limited remand, it must make certain that reconsideration of the issues remanded will not alter the proper calculation of other sentencing variables outside the scope of the remand. The continued independence of the variables becomes less likely with each additional issue remanded for reconsideration. Therefore, the delicate balancing that occurs in the sentencing process in light of the complexity of the Sentencing Guidelines leads this court to believe that limited remands are less likely to be desirable or effective when multiple issues require reconsideration.

### B. The Facts of This Case

 Applying these considerations to the facts of this case, we conclude that our remand limited the district court to reconsideration of the fine imposed against Campbell. The relevant section of the opinion read:

Contrary to Campbell's objections and the district court's order, Campbell was placed within the financial program and, within less than three years, $42,000.00 worth of interest had been added to Campbell's original fine. Thus, Campbell's original fine has a balance of approximately $142,000.00. At the government's rate of interest, which mimics that of a credit card, Campbell's fine will exceed $1,000,000.00 at the time of his schedule [sic] release. This is absurd.

This is a classic case where there is a loss of common sense in the application of a statute. Campbell is clearly entitled to some relief. In order to provide that relief, the judgment of the district court is vacated and the case is remanded to the district court for an evidentiary hearing where Campbell is represented by counsel. The district court's inquiry should relate to the forfeiture of the real estate and the validity of the district court's determination of Campbell's financial ability at the original sentencing hearing. It is within the province of the district court to correct this error and to permanently correct Campbell's records so that any fine imposed upon Campbell does not become so onerous as to result in Campbell's permanent incarceration in virtual debtor's prison.

*United States v. Campbell,* 1995 WL 758468, at *1.

Upon reviewing this language, we hold that it creates a limited remand. The appellate panel based its decision to remand on a discrete issue that had produced an unjust result. This court outlined in detail the intended scope of the district court's inquiry, limiting its scope to the "forfeiture of the real estate and the validity of the district court's determination of Campbell's financial ability at the original sentencing hearing." *Id.* This court did not direct the district court to

entertain de novo consideration of all issues upon resentencing.

This is not a situation where a number of sentencing issues caused the appellate court concern, and after which the appellate court might favor granting the district judge latitude in the recalculation of Campbell's sentence. There was no sentencing issue on appeal. This court held that the fine imposed on Campbell was improper and directed the district court to change it. The district judge properly recognized and followed this limited instruction.

The remand in this case articulated with particularity the scope of the district court's task. We therefore hold that the district judge properly refused to reopen sentencing to consider recalculation of the drug quantity.

### C. The Sentencing Guideline Amendment

■ Campbell argues that even if this court holds that the remand was limited, a change in the law authorizes and obliges the district judge to consider the new law in resentencing. This court has held that exceptions to the law-of-the-case doctrine arise "where there is 'substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice.'" *Moored,* 38 F.3d at 1421 (citing *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967)). *See also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 790 (2d ed. 1981 & Supp.1998) (writing that "the major grounds that justify reconsideration involve 'an intervening change of controlling law, the availability of new evidence; or the need to correct a clear error or prevent manifest injustice"). Additionally, as discussed above, the presumption of de novo consideration at resentencing relaxes the law of the case doctrine, and has prompted this court to remark that the doctrine has "little applicability in the sentencing arena." *United States v. Hebeka,* 89 F.3d 279, 284 (6th Cir.), *cert. denied,* 519 U.S. 999, 117 S.Ct. 496, 136 L.Ed.2d 388

(1996). Whether or not the list of exceptions is broader in the area of sentencing, we can find no exception here. We conclude that there was not an intervening change in the law.

Amendment 439 revised Sentencing Guideline § 1B1.3 in 1992 to provide that a defendant will be held accountable for the conduct of others only when the conduct was reasonably foreseeable. *See* U.S. Sentencing Guidelines Manual (U.S.S.G.) app. C, amend. 439 (1994). Although not originally part of the Sentencing Guideline itself, this standard was set forth in the application notes as early as 1989. *See* U.S.S.G. § 1B1.3, Application Note 1 (1989). Campbell argues that a four-kilogram transaction of cocaine occurring after his incarceration was not "reasonably foreseeable."

A number of circuits have held that Amendment 439 did not substantively alter the guideline, but merely clarified or explained it. *See United States v. Lambert,* 995 F.2d 1006, 1009 n. 3 (10th Cir.), *cert. denied,* 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Evbuomwan,* 992 F.2d 70, 74 n. 1 (5th Cir.1993). Furthermore, in *Stinson v. United States,* 508 U.S. 36, 42–43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), the Supreme Court held that the commentary interpreting or explaining one of the Sentencing Guidelines has as much binding force as the text and policy statements of the Sentencing Guidelines themselves, even though such commentary is not reviewed by Congress. *See Stinson,* 508 U.S. at 38, 113 S.Ct. 1913 (holding that commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

The case law clearly explains that the "change in the law" asserted by Campbell was merely a clarification of the Sentencing Guidelines, and not a change in any underlying principles. Indeed, the "reasonably foreseeable" standard had been recognized by this court in cases before Campbell's sentencing. *See United States v. Rodriguez,* 896 F.2d 1031, 1033 (6th Cir.1990); *United States v. Williams,* 894 F.2d 208, 211–12 (6th Cir.

1990).[4] The language Campbell relies on, namely the "reasonably foreseeable" language, was simply transferred from the commentary to the actual text of the guideline. Under the precedent cited above, this constitutes no "change" in the law at all. If Campbell thought that the district judge misapplied the Sentencing Guidelines, he should have raised this on his initial appeal.

## III. CONCLUSION

For the reasons expressed above, we **AFFIRM** the judgment of the district court.

---

4. Both cases were applying § 2D1.4, relating to conspiracy, which was "deleted by consolidation with the guidelines applicable to the underlying substantive offenses." *See* U.S.S.G. § 2D1.4 (1997).