**UNITED STATES of America, Plaintiff,**

v.

**Roger S. FAULKENBERRY, Defendant.**

**Case No. 2:06–CR–129(4).**

United States District Court, S.D. Ohio, Eastern Division.

Nov. 29, 2010.

Douglas W. Squires, Deborah F. Sanders, United States Attorney's Office, Columbus, OH, N. Nathan Dimock, Colleen Ann Conry, Jeffrey Neiman, Leo Wise, Nicole H. Sprinzen, Wes R. Porter, United States Department of Justice, Kathleen McGovern, Washington, DC, for Plaintiff.

Brian Edward Dickerson, Roetzel & Andress, LPA, James Lloyd Ervin, Jr., Benesch, Friedlander, Coplan & Aronoff, LLP, Sharlene I. Chance, The Dickerson Law Group, Javier H. Armengau, Javier H. Armengau LPA, Columbus, OH, David Carr Greer, James P. Fleisher, Bieser, Greer & Landis, Dayton, OH, Martin G. Weinberg, Boston, MA, for Defendant.

### *OPINION & ORDER*

ALGENON L. MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court for the resentencing of Roger S. Faulkenberry. For the reasons set forth below, Faulkenberry is sentenced to 60 months on Count 1 and 60 months on Count 4, with Count 4 to run consecutively to Count 1, and 60 months on Counts 5, 6, 7, and 11, with Counts 5, 6, 7, and 11 to run concurrently with Counts 1 and 4, for a total of 120 months. He is ordered to pay restitution in the amount of $2,384,147,105.09 jointly and severally with his co-defendants until the amount is paid.

### II. BACKGROUND

National Century Financial Enterprises (NCFE) defrauded its investors of more than $2.4 billion. On March 13, 2008, a jury convicted Roger Faulkenberry of multiple counts for his role in the fraud: four counts of securities fraud (Counts 4–7), and one count each of wire fraud (Count 11), conspiracy to commit securities fraud and wire fraud (Count 1), conspiracy to commit money laundering (Count 17), and money laundering (Count 24). He was sentenced to a term of 10 years; 10 years on the conspiracy to commit money laundering and money laundering counts and 5 years on the conspiracy, securities fraud, and wire fraud counts, with all to run concurrently. He was ordered to pay restitution jointly and severally with his co-defendants in the amount of $2.4 billion. Mr. Faulkenberry appealed, challenging the sufficiency of the evidence supporting each of his convictions. The Sixth Circuit affirmed the fraud convictions, overturned the money laundering convictions, vacated the total sentence, and remanded for resentencing. *United States v. Faulkenberry*, 614 F.3d 573, 577 (6th Cir.2010).

### III. LAW AND ANALYSIS

#### A. The Sixth Circuit's Mandate

According to the law of the case doctrine, "a legal decision made at one stage of a civil or criminal case ... be-

comes the law of the case for future stages of the same litigation." *United States v. Bell*, 988 F.2d 247, 250 (citing *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987); *United States v. Duchi*, 944 F.2d 391, 393 (8th Cir.1991)); *see also United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994). Once a decision has been made, the doctrine "precludes a court from 'reconsideration of identical issues.'" *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306 (6th Cir.1997) (quoting *Petition of United States Steel Corp.*, 479 F.2d 489, 493 (6th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)). Important policy concerns support this doctrine, including "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *Bell*, 988 F.2d at 250 (quoting *United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.), *cert. denied*, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991)).

▌ One specific application of this doctrine is the mandate rule, which "requires lower courts to adhere to the commands of a superior court" on remand.[1] *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994) (citing *Bell*, 988 F.2d at 251 (1st Cir.1993)). According to this rule, a lower court may not consider questions that the appellate court's mandate has indisputably answered. The court may, however, rule on issues that the superior court has left open or unanswered. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) ("The general proposition that [the lower

court] was bound to carry the mandate of the upper court into execution and could not consider the questions which the mandate rule laid at rest-is indisputable.")

▌ Remands can take two forms: general or limited. "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir.1999) (internal citations omitted). As applied to resentencing, remand orders are presumed to be general, and allow the district court to "review sentencing matters de novo." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir.1999) (citing *Moore*, 131 F.3d at 598; *United States v. Caterino*, 29 F.3d 1390, 1394–95 (9th Cir. 1994); *United States v. Cornelius*, 968 F.2d 703 (8th Cir.1992); *United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Sanchez Solis*, 882 F.2d 693, 699 (2d Cir. 1989)). This presumption of de novo resentencing gives the district court the discretion to consider and balance all of the elements relevant to a sentencing determination. *Campbell*, 168 F.3d at 266. It can only be overcome by "an explicit limitation" that outlines the procedure the district court must follow with particularity. *Campbell*, 168 F.3d at 268 (quoting *Moore III*, 131 F.3d at 598). If the case is remanded without explicit limitations, the district court can start over, resentencing

---

1. This law of the case doctrine is one of policy and practice as opposed to a restriction on jurisdiction, and thus a modicum of flexibility exists in exceptional circumstances. As the Sixth Circuit has explained, these circumstances are where there is "substantially different evidence raised on subsequent trial; a

subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice." *Petition of United States Steel Corp.*, 479 F.2d at 494 (citing *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir.1967)). None apply in this case.

the defendant after considering the facts and charges that remain. *See United States v. Moored,* 38 F.3d 1419, 1422 (6th Cir.1994) ("absent explicit limitations in the appellate court's mandate, an order vacating a sentence and remanding the case for resentencing directs the sentencing court to begin anew, so that fully de novo resentencing is entirely appropriate . . . .") (internal quotation omitted). But if the remand is limited, the district court is precluded from considering the decided issues and must tailor the new sentence to the scope of the appellate court's ruling. *See United States v. O'Dell,* 320 F.3d 674, 679 (6th Cir.2003) (citing *United States v. Moore,* 131 F.3d 595, 598 (6th Cir.1997)).

The case law does not establish universal standards for determining whether a remand is limited or general. *Campbell,* 168 F.3d at 266. The particular facts of each case are necessary to making a determination, but certain guiding principles apply. For example, in *United States v. Santonelli,* 128 F.3d 1233 (8th Cir.), the appellate court specifically directed the district court to reconsider the amount of drugs the defendant possessed. The district court correctly treated this as a limited remand. *Id.* at 1237–38. By comparison, in *United States v. Cornelius,* 968 F.2d 703 (8th Cir.1992), the district court interpreted a remand order as prohibiting it from considering new evidence regarding whether the defendant was an armed career criminal. But the appellate court had only found that a prior breaking and entering conviction was a sentence enhancement under 18 U.S.C. § 924(e). It did not determine whether the defendant was an armed career criminal. *Id.* at 706. The appellate court did not place any limits on the district court, but simply reversed and remanded for resentencing. Thus, this order was general as opposed to limited. The district court was free to resentence the defendant de novo, so long

as its sentence was consistent with the enhancement. *Id.*

Applying these standards, the Sixth Circuit's remand order in this case is general. In explaining its decision to vacate all of the sentences, the appeals court stated:

> When considering a multiple-count criminal judgment that produced "interdependent" sentences, we may vacate all sentences even if only one is reversed on appeal. We possess this supervisory power to vacate and remand even when the parties do not challenge the defendant's sentences.

> Having reviewed the sentencing transcripts, we are convinced that the district court imposed interdependent sentences here. Had the district court known that the money-laundering convictions were valid, it might have chosen to make some of the other sentences consecutive rather than concurrent. . . . We therefore exercise our discretion to remand the case to allow the district court to determine, in the first instance, what Faulkenberry's sentence should be in light of our decision.

*Faulkenberry,* 614 F.3d at 590–91 (internal citations omitted). The Sixth Circuit finds that the sentences are interdependent, vacates the entire sentencing package, and then remands to this Court to reconsider the appropriate sentences "in the first instance." It takes no steps to direct this Court's procedure, and thus, does not overcome the presumption in favor of de novo resentencing. *See Campbell,* 168 F.3d at 267 ("A limited remand must convey clearly the intent to limit the scope of the district court's review."). Accordingly, the Sixth Circuit has issued a general remand and this Court may resentence the defendants de novo.

This Court is, however, bound by the commands of the Sixth Circuit. As it instructed in *United States v. Moored:*

[U]pon remand of a case for further proceedings after a decision by the appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'

38 F.3d at 1421 (quoting *United States v. Kikumura,* 947 F.2d 72, 76 (3d Cir.1991)) (citations omitted). Here, the Sixth Circuit's mandate is predicated on its finding that the sentences were interdependent.[2] It relied on this determination to vacate *all* of the sentences and remand for resentencing. Interdependency is the law *of* the case, and according to both the law of the case doctrine and the mandate rule, the Court is obliged to follow it.[3]

### B. Double Jeopardy Clause

Faulkenberry argues that he had a legitimate expectation of finality in his sentence, and now that the money laundering counts have been overturned, it would violate the Double Jeopardy Clause to increase his original sentences on the fraud counts. He grounds his legitimate expectation of finality in the rule that when nothing in the record shows that the defendant knew his sentence could increase, double jeopardy prohibits an increase. Furthermore, he did not appeal his sentence; instead, he appealed the convictions and asked that the case be remanded for a new trial.

In *United States v. DiFrancesco,* the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits enhancement of a defendant's sentence after the defendant has developed "an expectation of finality in the original sentence ..." 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). If the expectation of finality is legitimate, then the double jeopardy clause prohibits an increase in the sentence. If some circumstance undermines the legitimacy of that expectation, however, then the court may increase the sentence. *U.S. v. Fogel,* 829 F.2d 77, 87 (D.C.Cir.1987).

As explained in the foregoing analysis, this Court must follow the Sixth Circuit's mandate that the sentences at issue are interdependent. Thus, the analysis will proceed on that basis. Interdependent sentences often result from a sentencing package imposed on multiple counts. *See Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir.1997). Under the sentencing packaging doctrine:

When a defendant is convicted of more than one count of a multi-count indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of multicount conviction are reversed and one or more counts are affirmed, the result is an "unbundled" sentencing package. Because the

---

2. The defendant argues that his sentence is not interdependent. In the abstract, there may be merit to this claim. But as the analysis shows, the Sixth Circuit has determined otherwise.

3. The law of the case doctrine does not extend to dicta, or to issues that were neither presented for decision nor fully briefed for the appellate court. *See Perkins v. American Electric Power Fuel Supply,* 91 Fed.Appx. 370 (6th Cir.2004). This rule is inapplicable in situations like the one presented here, where the appellate court's determination is critical to the holding.

sentences are interdependent, the reversal of convictions underlying some, but not all, of the sentence renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.

Thus, ... [upon remand] the district court ha[s] the authority to reevaluate the sentencing package ... and resentence the defendant to effectuate the original sentencing intent.

*United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir.1987); *see also United States v. Hicks*, 146 F.3d 1198, 1202 (10th Cir.1998). Consistent with this doctrine, an appellate court may vacate an entire sentencing package even if only one of the convictions is overturned because this reversal hinders the effectiveness of the entire sentencing package. *Id.; see also United States v. Clements*, 86 F.3d at 601.

In *United States v. Smith*, 116 F.3d 857 (10th Cir.1997), the Tenth Circuit considered the relationship between the sentencing packaging doctrine and the mandate rule. The *Smith* court found that the application of the sentencing packaging doctrine to an interdependent sentence did not impact the presumption of de novo resentencing on general remand. Unless the mandate explicitly limits the court's discretion, the district court is free to reconsider the entire sentencing package. To prevent reconsideration of the entire sentencing package would be inconsistent with the interdependent nature of the sentencing guidelines. *Id.* at 859. Accordingly, this Court has the authority to consider the sentencing package in light of the changed circumstances and resentence the defendant.

■ Defendant's double jeopardy claims are rooted in the common law practices that gave rise to America's earliest legal traditions. The constitutional protections it affords have become deeply ingrained in our system of jurisprudence, guaranteeing

that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The continued vitality of these protections is essential to the fair administration of justice. The law, however, is clear. When a defendant challenges one count of interrelated convictions, he has no expectation of finality in the total sentencing package.[4] If the appellate court vacates the sentences and remands in accordance with the sentencing package doctrine, the trial court may increase the sentences on the remaining counts without implicating the double jeopardy clause. *See United States v. Rodriguez*, 112 F.3d 26, 31–32 (1st Cir. 1997) (no expectation of finality in total sentencing package after appeal of 1 count in multicount conviction; double jeopardy no bar to resentencing); *United States v. Mata*, 133 F.3d 200, 202 (2d Cir.1998) (no expectation of finality in total sentencing

---

4. In considering a defendant's expectation of finality, whether or not the defendant places the sentence at issue may play a role. When interdependent sentences are at issue, however, the sentencing packaging doctrine applies regardless of whether the defendant appeals the conviction or the sentence. This is restricted to situations such as the one presently before the Court, and should not be read to extend beyond the limited use of interdependent sentences.

package if defendant challenged conviction on other counts of package, thereby placing validity of entire sentencing package at issue; double jeopardy no bar to resentencing); *United States v. Benbrook,* 119 F.3d 338, 340 (5th Cir.1997) (no expectation of finality because defendant challenged 1 count of 2 interrelated convictions, thereby placing validity of entire sentencing package at issue); *Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir.1997) (no expectation of finality because defendant challenged 1 count of 2 interrelated convictions, thereby placing validity of entire sentencing package at issue); *United States v. Radmall,* 340 F.3d 798, 801 (9th Cir.2003) (no expectation of finality in total sentencing package if defendant challenged 1 portion of multicount sentence, thereby placing validity of entire sentencing package at issue; double jeopardy no bar to resentencing).

■ Here, Defendant appealed each of his convictions. As the Sixth Circuit determined that the sentences he originally received were interdependent, this appeal placed the entire sentencing package at issue. Thus, double jeopardy poses no bar to resentencing in this case.

### C. Resentencing

#### 1. *Legal Standards and the Scope of Resentencing*

■ On general remand, the Court is required to resentence the defendant de novo, reconsidering the sentences imposed on each count as well as the aggregate sentence.[5] *United States v. Rigas,* 583 F.3d 108, 118 (2d Cir.2009). The court will consider the cumulative criminal behavior that remains now that the money laundering convictions have been overturned. *See Id.* In other words, this Court will look to the totality of the facts and the remaining

convictions in order to determine the appropriate sentence.

■ In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court rendered the Sentencing Guidelines advisory. The Guidelines are now "one factor among several courts must consider in determining the appropriate sentence." *Kimbrough v. United States,* 552 U.S. 85, 90, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). Although the guidelines are no longer mandatory, the Supreme Court has instructed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (citing *Rita v. United States,* 551 U.S. 338, 347–48, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). After determining the Guidelines range, district courts are obligated to consider the sentencing factors set forth in 18 U.S.C. § 3553(a)(1) in light of the defendant's individual facts and circumstances. *Gall,* 552 U.S. at 48–51, 128 S.Ct. 586. The Sixth Circuit applies a presumption of reasonableness to within-Guidelines sentences. *United States v. Vonner,* 516 F.3d 382 (6th Cir.2008) (*en banc*). Sentences that vary outside the Guidelines, however, are not presumptively unreasonable. *Gall,* 552 U.S. at 50–51, 128 S.Ct. 586.

#### 2. *The Presentence Report*

The Presentence Report (PSR) calculates a Criminal History Category of I and a Base Offense Level of 47. Pursuant to Sentencing Guideline 5A app. 2, the Offense Level is treated as Offense Level 43 because the calculated level is more than Offense Level 43. Under the guidelines, this yields a sentence of life imprisonment.

---

5. Of course, as this is a de novo resentencing, the defendant is also entitled to raise issues that he may have previously waived by failing to raise them. *Quintieri,* 306 F.3d at 1225.

At his resentencing, Faulkenberry's counsel joined in the objections that had been made to the PSR at the original sentencing. In calculating the Base Offense Level, Faulkenberry objected to: (1) the 30–level increase for the amount of the loss; which the PSR estimates at $2,894,150,500.00; (2) the 4–level increase for the number of victims; (3) the 2–level increase for "sophisticated means;" and (4) the 4–level increase for his role as an organize or leader of the fraud conspiracy.

 The Court's findings with respect to these objections remain the same. First, the 30–level increase for the amount of the loss is appropriate. The Sixth Circuit has repeatedly held that post-*Booker*, district courts may engage in judicial fact-finding when calculating a criminal defendant's sentence. *Vonner*, 516 F.3d at 385; *United States v. Maken*, 510 F.3d 654, 660–61 (6th Cir.2007). The Court determines the amount of losses stemming from criminal activity based on a preponderance of the evidence. A 30–level enhancement applies here if the losses sustained in connection with the National Century fraud exceeded $400 million. According to the commentary to Sentencing Guideline 2B1.1(b)(1), "[t]he court need only make a reasonable estimate of the loss."

The Government's investigation puts the total amount of investor losses in this case at $2,894,150,500.00. The PSR lists more than 75 public and private institutional investors, and the amount of money they each lost as a result of the fraud at National Century. Here, the evidence amply supports the PSR's loss calculation. First, the evidence established that at the time of National Century's collapse in November 2002, NPF VI had outstanding bonds totaling approximately $900 million, while the outstanding bonds in NPF XII equaled about $2 billion. In addition, the Government's summary witness testified that in the four-year period between January 1, 1999 and December 31, 2002, National Century made $1.3 billion in unsecured loans to eight healthcare providers. Accordingly, this Court finds that $2,894,150,500 is a fair estimate of the losses investors sustained in this case. A 30–point increase in the calculation of Defendant Faulkenberry's Base Offense Level is therefore appropriate under the Sentencing Guidelines.

 Second, Guideline 2B1.1(b)(2)(B) calls for a 4–level enhancement if the offense involved 50 or more victims. Here, no Defendant, including Faulkenberry, disputes that numerous public and private institutional investors bought National Century's bonds. The PSR specifically identifies more than 75 such investors and the amount of money each lost. Faulkenberry does not argue that the investors listed in the PSR are in any way inaccurate, nor does he dispute that more than 50 investors suffered losses when National Century collapsed; instead, he merely says that the Government failed to produce evidence at trial substantiating the existence and identities of the investors. The Court finds that the record establishes, by a preponderance of the evidence, that there were 50 or more investor victims, and that therefore the 4–level enhancement is proper.

 Third, Sentencing Guideline 2B1.1(b)(9)(C) requires a 2–level enhancement if the offense involved "sophisticated means." The Guideline Commentary explains that "sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Here, there was abundant evidence presented at trial that National Century executives misrepresented the nature of the NPF notes to investors, made billions of dollars of unsecured loans to healthcare providers, fabricated monthly investor reports, in-

vented financial data, and gave false and misleading information to outside auditors, the investment portfolio trustees, the underwriter of the bonds, and rating agencies. The evidence further established that Defendant Faulkenberry knew about these activities and participated in them in his position as head of investor relations and through his participation on National Century's Executive Committee. Accordingly, the 2–level enhancement for "sophisticated means" is proper.

■ Fourth, the 4–level increase for his role as an organizer or leader of the fraud conspiracy. Guideline 3B1.1 calls for a 4–level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive." As already noted, Faulkenberry was in charge of communicating National Century's business model to investors. The evidence at trial showed that he lied to investors about how their money was actually spent, and about how risky National Century's bonds actually were. Furthermore, Faulkenberry authorized advances to healthcare providers and instructed lower-level employees to effectuate those advances. There is no question that the criminal activity here involved five or more participants: Criminal charges have been brought against eleven owners and senior executives, of whom five have been convicted following a jury trial, and several others have pleaded guilty. Accordingly, this enhancement applies to Faulkenberry.

### 3. § 3553(a) Factors

After calculating a defendant's advisory Guidelines sentence, the Court is obligated to consider the factors set forth in § 3553(a) to fashion a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. These include: (1) the nature and circumstances of the offense and the histo-ry and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and deter criminal conduct; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to the victims.

First, the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. Faulkenberry was convicted of six counts: one count of conspiracy, four courts of securities fraud, and one count of wire fraud. Faulkenberry and the other convicted senior executives perpetrated a massive fraud that spanned nearly a decade. This Court presided over the trial, and it is clear that the conspirators went to enormous lengths to disguise and conceal their operations from the outside world. Despite overwhelming evidence to the contrary, and despite his role as head of National Century's Securitization Department, and later its chief of Client Development, Faulkenberry has steadfastly denied that he knew anything about the fraud at National Century and he continues to blame others, especially his colleague Sherry Gibson and National Century's CEO Lance Poulsen. At the same time, Faulkenberry appears to argue that the company perpetuated no wrongs, that its operations were adequately disclosed, and that it the investors themselves failed to do their due diligence before investing, or failed to understand National Century's business model.

As to Faulkenberry's individual characteristics, he is 49 years old and has no criminal record. He was raised largely by a single mother, with whom he was close, because his father passed away when he was 12 years old. He is well-educated, holding a B.A. from Southern Methodist University and an M.B.A. from New York

University. Faulkenberry has received high marks for his employment performance. He worked at National Century for nine years. He then worked in corporate-development capacities at companies in Denver and Indianapolis following National Century's demise. Faulkenberry is a devoted to his children and committed to his community. The misdeeds of his corporate life bespeak a different person than the good deeds of his family life.

Second, the sentence imposed must reflect the seriousness of the offense, provide just punishment, and deter criminal conduct. The magnitude of the National Century fraud places it among the worst in history by a privately-held corporation. As has been noted previously, Faulkenberry worked at NCFE for nine years. The evidence at trial established that during that time, he knew about the fraud and participated in it, principally by lying to investors about how National Century actually used its money. The evidence showed that Faulkenberry regularly received internal emails and memos discussing National Century's rampant unsecured lending to healthcare providers. Sherry Gibson testified that among all the other National Century executives, she was closest to Faulkenberry and often complained to him about the amount of work it took for her to falsify the data presented to the investors, rating agencies, and auditors. As a result of his and his co-defendants' actions, thousands of investors were lied to and suffered considerable financial losses. Investors and other entities were devastated, and many were forced to go under.

In considering the seriousness of the offense, two of the interests that Congress sought to vindicate were specific deterrence and general deterrence. Specific deterrence is intended to deter a particular defendant from reoffending. General deterrence is designed to dissuade others form engaging in similar fraudulent conduct. The Court is persuaded that the stigma, public embarrassment, and financial and other costs associated with his felony conviction will likely prevent Faulkenberry from reoffending. An appropriate sentence, however, will appropriately punish Faulkenberry and communicate to other potential white-collar offenders that steep penalties will await them if they choose to follow in Faulkenberry's footsteps. White-collar offenses, like those Faulkenberry has been convicted of, are carried out painstakingly and deliberately and cause significant disruption to commercial affairs. Such crimes reduce confidence in the integrity of the marketplace and cause severe economic harm to individuals. As a matter of general deterrence, an appropriately stiff sentence for Mr. Faulkenberry will send a message to other senior corporate executives that they too will face adverse consequences and criminal liability if they implement the type of instructions that their superior's might direct. The day has long passed when, "I was just taking orders," would constitute a viable defense.

Third, the Court is required to consider the kinds of sentences available, including non-incarceration alternatives. As discussed above, in order to achieve specific and general deterrence, and to impose a punishment that is just based on the magnitude of the fraud and the number of victims affected, incarceration is an appropriate punishment.

Fourth, the Court is obligated to fashion a sentence for Faulkenberry in line with the sentences that similarly situated offenders have received, both in this case and in other cases. The sentence that the Court imposes in this case will reflect the Court's view of the significance of Faulkenberry's conduct in terms of the counts on which he has been convicted and which have withstood the scrutiny of the Court of

928

Appeals. The Court will look at his conduct in the context of the overall criminal enterprise and consider the importance of his role to the conspiracy.

Faulkenberry's co-defendants, Sheri Gibson and John Snoble, each received four-year terms of incarceration. While Faulkenberry has not asked for a four-year term, he has asked for a five-year term. Both Gibson and Snoble, however, pleaded guilty and substantially cooperated with the Government's investigation and prosecution in this matter. Their situations are thus easily distinguishable from Faulkenberry's.

Other defendants convicted in complex financial frauds have typically received anywhere from 5 to 25 years of incarceration, depending upon their position within the company, the nature and extent of the fraud, and whether they cooperated with the Government's investigation. Among the high-profile defendants sentenced in white-collar-fraud matters in recent years, Faulkenberry cites Bernard Ebbers, the CEO of WorldCom, who received 25 years of imprisonment; Enron's Jeffrey Skilling, who was sentenced to 24 years of imprisonment; John and Timothy Rigas who were sentenced to 15 and 20 years respectively, for their role in the Adelphia fraud; and Samuel Israel, who received 20 years of incarceration for his role in the Bayou Hedge Fund Group Fraud.

Fifth, 18 U.S.C. § 3663A mandates that the Court order restitution. As already noted, the Court determines that the monetary losses stemming from the National Century fraud total $2,894,150,500. When taking into account recoveries to date, the total outstanding losses are $2,384,147,105.09. The Court therefore concludes that Defendant Faulkenberry and his codefendants shall jointly and severally make restitution to the victims of their fraud in this amount.

### 4. Imposition of Sentence

■ As noted above, the guidelines sentence in this case is life. Faulkenberry asks the Court to impose a sentence of incarceration far lower than that. After considering the § 3553(a) factors, the Court agrees that a substantial variance from the advisory Guidelines range is warranted. As Faulkenberry correctly points out, the harsh sentence recommended by the Guidelines is primarily driven by the loss calculation, which increases his Base Offense Level by 30 points. As has become common among district courts sentencing white-collar offenders in financial fraud cases, the Court finds that the loss calculation substantially overstates the gravity of the offense here and declines to impose a within-Guidelines sentence.

■ That being said, in light of the scope and complexity of the fraud; Faulkenberry's role as the principle liaison to the investors; the extraordinary lengths that Faulkenberry and his codefendants went to conceal their real use of investor dollars; and the billions in losses that investors suffered, the Court concludes that a sentence of 120 months, or 10 years, of incarceration is sufficient, but not greater than necessary, to punish Faulkenberry, deter similar criminal conduct, promote respect for the law, and otherwise satisfy the goals of sentencing. The Court also finds that this sentence is in keeping with the sentences imposed against other criminal defendants convicted of crimes similar to Faulkenberry's and is consistent with the sentences imposed against his co-defendants.

■ Accordingly, pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), and § 5G1.2(d) of the Sentencing Guidelines, it is the judgment of this Court that Faulkenberry is sentenced to 60 months on Count 1 and 60 months on Count 4, with Count 4 to run consecutively

to Count 1, and 60 months on Counts 5, 6, 7, and 11, with Counts 5, 6, 7, and 11 to run concurrently to Counts 1 and 4, for a total of 120 months. Faulkenberry is ordered to pay restitution pursuant to 18 U.S.C. § 3663A in the amount of $2,384,147,105.09 jointly and severally with his co-defendants until the amount is paid.

**IT IS SO ORDERED.**