**UNITED STATES of America, Plaintiff,**

v.

**Donald H. AYERS, Defendant.**

Case No. 2:06–CR–129(3).

United States District Court, S.D. Ohio, Eastern Division.

Dec. 22, 2010.

Douglas W. Squires, Deborah F. Sanders, United States Attorney's Office, Columbus, OH, Kathleen McGovern, Washington, DC, N. Nathan Dimock, Colleen Ann Conry, Jeffrey Neiman, Leo Wise, N. Nathan Dimock, Nicole H. Sprinzen, U.S. Dept. of Justice, Criminal Division, Washington, DC, for Plaintiff.

Peter C. Anderson, William R. Terpening, Anderson Terpening PLLC, Charlotte, NC, Gerald Gordon Simmons, Columbus, OH, John Edward Haller, Shumaker Loop & Kendrick, Columbus, OH, Todd A. Foster, Cohen, Foster & Romine, P.A., Tampa, FL, for Defendant.

### OPINION & ORDER

ALGENON L. MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court for the resentencing of Donald H. Ayers. For the

reasons set forth below, pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), and § 5G1.2(d) of the Sentencing Guidelines, it is the judgment of this Court that Mr. Ayers is sentenced to 60 months on Count 1, 60 months on Count 2, and 60 months on Count 3, with Counts 1, 2, and 3 to run consecutively, and 60 months on Counts 4, 5, 6, and 7, with Counts 4, 5, 6, and 7 to run concurrently to Counts 1 through 3, for a total of 180 months. He is ordered to pay restitution in the amount of $2,384,147,105.09 jointly and severally with his co-defendants until the amount is paid.

## II. BACKGROUND

National Century Financial Enterprises (NCFE) defrauded its investors of more than $2.4 billion. On March 13, 2008, a jury convicted Donald Ayers of multiple counts for his role in the fraud: six counts of securities fraud (Counts 2–7), and one count each of conspiracy (Count 1) and conspiracy to commit money laundering (Count 17). He was sentenced to a term of 180 months: 180 months on Count 17, and 60 months on each of Counts 1 through 7, with all sentences to run concurrently. He was ordered to pay restitution jointly and severally with his co-defendants in the amount of $2.4 billion. Mr. Ayers appealed, challenging the sufficiency of the evidence supporting each of his convictions. The Sixth Circuit affirmed the fraud convictions, overturned the money laundering conviction, vacated the total sentence, and remanded for resentencing. *United States v. Ayers*, 386 Fed.Appx. 558 (6th Cir., 2010).

## III. LAW AND ANALYSIS

### A. The Sixth Circuit's Mandate

■ According to the law of the case doctrine, "a legal decision made at one stage of a civil or criminal case ... becomes the law of the case for future stages of the same litigation." *United States v. Bell*, 988 F.2d 247, 250 (citing *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987)); *United States v. Duchi*, 944 F.2d 391, 393 (8th Cir.1991); *see also United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994). Once a decision has been made, the doctrine "precludes a court from 'reconsideration of identical issues.'" *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306 (6th Cir. 1997) (quoting *Petition of United States Steel Corp.*, 479 F.2d 489, 493 (6th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)). Important policy concerns support this doctrine, including "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *Bell*, 988 F.2d at 250 (quoting *United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.), *cert. denied*, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991)).

■ One specific application of this doctrine is the mandate rule, which "requires lower courts to adhere to the commands of a superior court" on remand.[1] *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994) (citing *Bell*, 988 F.2d at 251 (1st Cir.1993)). According to this rule, a lower court may not consider questions that the

---

1. This law of the case doctrine is one of policy and practice as opposed to a restriction on jurisdiction, and thus a modicum of flexibility exists in exceptional circumstances. As the Sixth Circuit has explained, these circumstances are where there is "substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice." *Petition of United States Steel Corp.*, 479 F.2d at 494 (citing *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir.1967)). None apply in this case.

appellate court's mandate has indisputably answered. The court may, however, rule on issues that the superior court has left open or unanswered. *See Sprague v. Ticonic Nat. Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) ("The general proposition that [the lower court] was bound to carry the mandate of the upper court into execution and could not consider the questions which the mandate rule laid at rest-is indisuptable.")

 Remands can take two forms: general or limited. "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999) (internal citations omitted). As applied to resentencing, remand orders are presumed to be general, and allow the district court to "review sentencing matters de novo." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999) (citing *Moore,* 131 F.3d at 598; *United States v. Caterino,* 29 F.3d 1390, 1394–95 (9th Cir. 1994)); *United States v. Cornelius,* 968 F.2d 703 (8th Cir.1992); *United States v. Smith,* 930 F.2d 1450, 1456 (10th Cir.), *cert. denied,* 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Sanchez Solis,* 882 F.2d 693, 699 (2d Cir. 1989). This presumption of de novo resentencing gives the district court the discretion to consider and balance all of the elements relevant to a sentencing determination. *Campbell,* 168 F.3d at 266. It can only be overcome by "an explicit limitation" that outlines with particularity the procedure the district court must follow. *Campbell,* 168 F.3d at 268 (quoting *Moore III,* 131 F.3d at 598). If the case is remanded without explicit limitations, the district court can start over, resentencing the defendant after considering the facts

and charges that remain. *See United States v. Moored,* 38 F.3d 1419, 1422 (6th Cir.1994) ("absent explicit limitations in the appellate court's mandate, an order vacating a sentence and remanding the case for resentencing directs the sentencing court to begin anew, so that fully de novo resentencing is entirely appropriate . . . .") (internal quotation omitted). But if the remand is limited, the district court is precluded from considering the decided issues and must tailor the new sentence to the scope of the appellate court's ruling. *See United States v. O'Dell,* 320 F.3d 674, 679 (6th Cir.2003) (citing *United States v. Moore,* 131 F.3d 595, 598 (6th Cir.1997)).

The case law does not establish universal standards for determining whether a remand is limited or general. *Campbell,* 168 F.3d at 266. The particular facts of each case are necessary to make a determination, but certain guiding principles apply. For example, in *United States v. Santonelli,* 128 F.3d 1233 (8th Cir.), the appellate court specifically directed the district court to reconsider the amount of drugs the defendant possessed. The district court correctly treated this as a limited remand because the appellate court mandated that it take certain actions at resentencing. *Id.* at 1237–38. By comparison, in *United States v. Cornelius,* 968 F.2d 703 (8th Cir.1992), the district court interpreted a remand order as prohibiting it from considering new evidence regarding whether the defendant was an armed career criminal. The appellate court, however, had only found that a prior breaking and entering conviction was a sentencing enhancement under 18 U.S.C. § 924(e). It did not determine whether the defendant was an armed career criminal. *Id.* at 706. The appellate court did not place any limits on the district court's ability to consider evidence, but simply reversed and remanded for resentencing. Thus, this order was general as opposed to limited. The dis-

trict court was free to resentence Mr. Ayers de novo, so long as its sentence was consistent with the enhancement. *Id.*

■ Applying these standards, the Sixth Circuit's remand order in this case is general. In explaining its decision to vacate all of the sentences, the appeals court stated:

> As we explained in Faulkenberry's appeal, had the district court known that the money-laundering conviction was invalid, it might have chosen to make some of Ayers's other sentences run consecutively, rather than concurrently. We therefore remand the case to allow the district court to determine, in the first instance, what Ayers's sentence should be in light of our decision.

*Ayers,* 386 Fed.Appx. at 566. Mr. Ayers argues that the lack of an explicit pronouncement regarding interdependency means that the Sixth Circuit did not find that Mr. Ayers's sentences were interdependent. The Sixth Circuit, however, uses its *Faulkenberry* rationale in support of its remand order. Turning to *Faulkenberry,* it is clear that the Sixth Circuit found Mr. Ayers's sentences to be interdependent. In that case, the court found that "[w]hen considering a multiple-count criminal judgment that produced 'interdependent' sentences, we may 'vacate all sentences even if only one is reversed on appeal.'" *United States v. Faulkenberry,* 614 F.3d 573, 590–91 (6th Cir.2010) (citing *United States v. Clements,* 86 F.3d 599, 601 (6th Cir. 1996)). It went on to determine, as it did in *Ayers,* that had the district court been aware of the invalidity of the money-laundering convictions, it might have imposed a

different sentence. *Id.* The same reasoning is at work in *Ayers* and *Faulkenberry;* in both, the Sixth Circuit employs its "supervisory power to vacate and remand" this Court's entire sentencing package and orders it to reconsider the appropriate sentences "in the first instance." *Ayers,* 386 Fed.Appx. at 566; *Faulkenberry,* 614 F.3d at 591. The appellate court takes no steps to direct this Court's procedure, and thus, does not overcome the presumption in favor of de novo resentencing. *See Campbell,* 168 F.3d at 267 ("A limited remand must convey clearly the intent to limit the scope of the district court's review."). Accordingly, the Sixth Circuit has issued a general remand and this Court may resentence the defendant de novo.

■ This Court is, however, bound by the commands of the Sixth Circuit. As it instructed in *United States v. Moored:*

> [U]pon remand of a case for further proceedings after a decision by the appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'

38 F.3d at 1421 (quoting *United States v. Kikumura,* 947 F.2d 72, 76 (3d Cir.1991)) (citations omitted). Here, the Sixth Circuit's mandate is predicated on its finding that the sentences were interdependent.[2] It relied on this determination to vacate *all* of the sentences and remand for resentencing. Interdependency is the law of the case, and according to both the law of the case doctrine and the mandate rule, the Court is obliged to follow it.[3]

---

**2.** The defendant argues that his sentence is not interdependent. In the abstract, there may be merit to this claim. But as the analysis shows, the Sixth Circuit has determined otherwise.

**3.** The law of the case doctrine does not extend to dicta, or to issues that were neither presented for decision nor fully briefed for the appellate court. *See Perkins v. American Electric Power Fuel Supply,* 91 Fed.Appx. 370 (6th Cir.2004). This rule is inapplicable in situations like the one presented here, where the

## B. Double Jeopardy Clause

Mr. Ayers argues that he had a legitimate expectation of finality in his sentence, and accordingly, it would violate the Double Jeopardy Clause to increase his original sentences on the fraud counts now that the money laundering count has been overturned. He grounds his legitimate expectation of finality in his acceptance of the restitution order and in the basis of his appeal. Mr. Ayers did not appeal his sentence; instead, he appealed the convictions and asked that the case be remanded for a new trial.

■ In *United States v. DiFrancesco,* the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits enhancement of a defendant's sentence after the defendant has developed "an expectation of finality in the original sentence ..." 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). If the expectation of finality is legitimate, then the double jeopardy clause prohibits an increase in the sentence. If some circumstance undermines the legitimacy of that expectation, however, then the court may increase the sentence. *U.S. v. Fogel,* 829 F.2d 77, 87 (D.C.Cir.1987).

■ As explained in the foregoing analysis, this Court must follow the Sixth Circuit's mandate that the sentences at issue are interdependent. Thus, the analysis will proceed on that basis. Interdependent sentences often result from a sentencing package imposed on multiple counts. *See Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir.1997). Under the sentencing packaging doctrine:

> When a defendant is convicted of more than one count of a multi-count indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of multicount conviction are reversed and one or more counts are affirmed, the result is an "unbundled" sentencing package. Because the sentences are interdependent, the reversal of convictions underlying some, but not all, of the sentence renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.
>
> Thus, ... [upon remand] the district court ha[s] the authority to reevaluate the sentencing package ... and resentence the defendant to effectuate the original sentencing intent.

*United States v. Shue,* 825 F.2d 1111, 1114 (7th Cir.1987); *see also United States v. Hicks,* 146 F.3d 1198, 1202 (10th Cir.1998). Consistent with this doctrine, an appellate court may vacate an entire sentencing package even if only one of the convictions is overturned because this reversal hinders the effectiveness of the entire sentencing package. *Id.; see also United States v. Clements,* 86 F.3d at 601.

In *United States v. Smith,* 116 F.3d 857 (10th Cir.1997), the Tenth Circuit considered the relationship between the sentencing packaging doctrine and the mandate rule. The *Smith* court found that the application of the sentencing packaging doctrine to an interdependent sentence did not impact the presumption of de novo resentencing on general remand. Unless the mandate explicitly limits the court's discretion, the district court is free to reconsider the entire sentencing package. To prevent reconsideration of the entire sentencing package would be inconsistent with the interdependent nature of the sentencing guidelines. *Id.* at 859. Accordingly, this Court has the authority to consider the sentencing package in light of the

appellate court's determination is critical to the holding.

changed circumstances created by the reversal of the money laundering conviction and resentence the defendant.

 Defendant's double jeopardy claims are rooted in the common law practices that gave rise to America's earliest legal traditions. The constitutional protections it affords have become deeply ingrained in our system of jurisprudence, guaranteeing:

> that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The continued vitality of these protections is essential to the fair administration of justice. The law, however, is clear. When a defendant challenges one count of interrelated convictions, he has no expectation of finality in the total sentencing package.[4] If the appellate court vacates the sentences and remands in accordance with the sentencing package doctrine, the trial court may increase the sentences on the remaining counts without implicating the double jeopardy clause. *See United States v. Rodriguez,* 112 F.3d 26, 31–32 (1st Cir. 1997) (no expectation of finality in total sentencing package after appeal of 1 count in multicount conviction; double jeopardy no bar to resentencing); *United States v.*

*Mata,* 133 F.3d 200, 202 (2d Cir.1998) (no expectation of finality in total sentencing package if defendant challenged conviction on other counts of package, thereby placing validity of entire sentencing package at issue; double jeopardy no bar to resentencing); *United States v. Benbrook,* 119 F.3d 338, 340 (5th Cir.1997) (no expectation of finality because defendant challenged 1 count of 2 interrelated convictions, thereby placing validity of entire sentencing package at issue); *Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir.1997) (no expectation of finality because defendant challenged 1 count of 2 interrelated convictions, thereby placing validity of entire sentencing package at issue); *United States v. Radmall,* 340 F.3d 798, 801 (9th Cir.2003) (no expectation of finality in total sentencing package if defendant challenged 1 portion of multicount sentence, thereby placing validity of entire sentencing package at issue; double jeopardy no bar to resentencing).

Here, Defendant appealed each of his convictions. As the Sixth Circuit determined that the sentences he originally received were interdependent, this appeal placed the entire sentencing package at issue. Thus, double jeopardy poses no bar to resentencing in this case.

### C. Resentencing

#### 1. *Legal Standards and the Scope of Resentencing*

 On general remand, the Court is required to resentence the defendant de novo, reconsidering the sentences imposed on each count as well as the aggregate sentence.[5] *United States v. Rigas,* 583

---

4. In considering a defendant's expectation of finality, whether or not the defendant places the sentence at issue may play a role. When interdependent sentences are at issue, however, the sentencing packaging doctrine applies regardless of whether the defendant appeals the conviction or the sentence. This is restricted to situations such as the one presently

before the Court, and should not be read to extend beyond the limited use of interdependent sentences.

5. Of course, as this is a de novo resentencing, the defendant is also entitled to raise issues that he may have previously waived by failing to raise them. *Quintieri,* 306 F.3d at 1225.

F.3d 108, 118 (2d Cir.2009). The court will consider the cumulative criminal behavior that remains now that the money laundering convictions have been overturned. *See Id.* In other words, this Court will look to the totality of the facts and the remaining convictions in order to determine the appropriate sentence.

■ In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court rendered the Sentencing Guidelines advisory. The Guidelines are now "one factor among several courts must consider in determining the appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). Although the guidelines are no longer mandatory, the Supreme Court has instructed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347–48, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). After determining the Guidelines range, district courts are obligated to consider the sentencing factors set forth in 18 U.S.C. § 3553(a)(1) in light of the defendant's individual facts and circumstances. *Gall*, 552 U.S. at 48–51, 128 S.Ct. 586. The Sixth Circuit applies a presumption of reasonableness to within-Guidelines sentences. *United States v. Vonner*, 516 F.3d 382 (6th Cir.2008) (*en banc*). Sentences that vary outside the Guidelines, however, are not presumptively unreasonable. *Gall*, 552 U.S. at 50–51, 128 S.Ct. 586.

## 2. The Presentence Report

The Presentence Report (PSR) calculates a Criminal History Category of I and a Base Offense Level of 48. Pursuant to Sentencing Guideline 5A app. 2, the Offense Level is treated as Offense Level 43 because the calculated level is more than Offense Level 43. Under the guidelines, this yields a maximum sentence of life. The statutory maximum is thirty-five years.

In calculating the Base Offense Level, Mr. Ayers objected to: (1) the 30–level increase for the amount of the loss; which the PSR estimates at $2,894,150,500.00; (2) the 4–level increase for the number of victims; and (3) the 2–level increase for "sophisticated means;" and (4) the 4–level increase for his role as an organize or leader of the fraud conspiracy.

The Court's findings with respect to these objections remain the same. First, the 30–level increase for the amount of the loss is appropriate. The Sixth Circuit has repeatedly held that post-*Booker*, district courts may engage in judicial factfinding when calculating a criminal defendant's sentence. *Vonner*, 516 F.3d at 385; *United States v. Maken*, 510 F.3d 654, 660–61 (6th Cir.2007). The Court determines the amount of losses stemming from criminal activity based on a preponderance of the evidence. A 30–level enhancement applies here if the losses sustained in connection with the National Century fraud exceeded $400 million. According to the commentary to Sentencing Guideline 2B1.1(b)(1), "[t]he court need only make a reasonable estimate of the loss."

The Government's investigation puts the total amount of investor losses in this case at $2,894,150,500.00. The PSR lists more than 75 public and private institutional investors, and the amount of money they each lost as a result of the fraud at National Century. Here, the evidence amply supports the PSR's loss calculation. First, the evidence established that at the time of National Century's collapse in November 2002, NPF VI had outstanding bonds totaling approximately $900 million, while the outstanding bonds in NPF XII equaled about $2 billion. In addition, the Govern-

ment's summary witness testified that in the four-year period between January 1, 1999 and December 31, 2002, National Century made $1.3 billion in unsecured loans to eight healthcare providers. Accordingly, this Court finds that $2,894,150,500 is a fair estimate of the losses investors sustained in this case. A 30–point increase in the calculation of Defendant Ayers's Base Offense Level is therefore appropriate under the Sentencing Guidelines.

Second, Guideline 2B1.1(b)(2)(B) calls for a 4–level enhancement if the offense involved 50 or more victims. Here, no Defendant, including Ayers, disputes that numerous public and private institutional investors bought National Century's bonds. The PSR specifically identifies more than 75 such investors and the amount of money each lost. Ayers does not argue that the investors listed in the PSR are in any way inaccurate, nor does he dispute that more than 50 investors suffered losses when National Century collapsed; instead, he merely says that the Government failed to produce evidence at trial substantiating the existence and identities of the investors. The Court finds that the record establishes, by a preponderance of the evidence, that there were 50 or more investor victims, and that therefore the 4–level enhancement is proper.

■ Third, Sentencing Guideline 2B1.1(b)(9)(C) requires a 2–level enhancement if the offense involved "sophisticated means." The Guideline Commentary explains that "sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Here, there was abundant evidence presented at trial that National Century executives misrepresented the nature of the NPF notes to investors, made billions of dollars of unsecured loans to healthcare providers, fabricated monthly investor reports, in-

vented financial data, and gave false and misleading information to outside auditors, the investment portfolio trustees, the underwriter of the bonds, and rating agencies. The evidence further established that Defendant Ayers knew about these activities and participated in them in his position as an owner of National Century and its Chief Operating Officer. Accordingly, the 2–level enhancement for "sophisticated means" is proper.

■ Fourth, the 4–level increase for his role as an organizer or leader of the fraud conspiracy. Guideline 3B1.1 calls for a 4–level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive." As already noted, Mr. Ayers was a National Century principal and Chief Operating Officer. The evidence established that he knew about and authorized the fraud scheme; he was both a leader and an organizer. There is no question that the criminal activity here involved five or more participants: criminal charges have been brought against eleven owners and senior executives, of whom five have been convicted following a jury trial, and several others have pleaded guilty. Accordingly, this enhancement applies to Mr. Ayers.

### 3. § 3553(a) Factors

After calculating a defendant's advisory Guideline's sentence, the Court is obligated to consider the factors set forth in § 3553(a) to fashion a sentence that is "sufficient, but not greater than necessary, to comply with the purposes of sentencing." These include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and deter criminal conduct; (3) the kinds of sentences available;

(4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to the victims.

First, the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. Mr. Ayers has been convicted to seven counts of conspiracy, securities fraud, and wire fraud. He and the other convicted senior executives perpetrated a massive fraud that spanned nearly a decade. Indeed, the fraud is believed to be the largest fraud involving a privately-held company in this country's history. And as the evidence made clear, they went to enormous lengths to disguise and conceal their operations. Despite overwhelming evidence to the contrary, and despite his role as an owner of NCFE, Mr. Ayers has steadfastly denied that he knew anything about the fraud at National Century. Furthermore, he continues to blame those who reported to him and his co-workers for any wrongdoing.

At the same time, Mr. Ayers also appears to argue that the company did not do anything wrong, that its operations were adequately disclosed, and that it was the investors themselves who failed to do their due diligence before investing, or who failed to understand National Century's business model. In other words, it was someone else's fault. But as I said earlier, and as I reiterate now, the evidence of the defendant's guilt in this case is simply overwhelming. He was the owner. He was the architect. He directed Dierker. He knew Gibson was circulating real reports and fabricated reports. He had both. He, Ms. Parrett, and Mr. Poulson had ownership interests in health care providers to whom he made unsecured loans. He stood to gain from these unsecured loans; and, in fact, he did gain from them.

As to his individual characteristics, Mr. Ayers is a 74–year–old man who has re-

tired from active employment and has no prior criminal record. The Court will consider both his age and the fact that he has no criminal record in making its ultimate decision. He served in the military for six years, including two years on active duty and four years in the army reserves, from which he was honorably discharged. Prior to his involvement in NCFE, he was a successful hospital administrator for both Riverside Hospital and Grant Medical Center. According to the letters this Court has received from many of Mr. Ayers's family and friends, he is a man of considerable integrity and generosity. To the Court, this indicates that he led a dual existence; while he may have been a generous person at NCFE, his integrity is, at best, questionable based upon the evidence that was presented in this Court.

Mr. Ayers was the primary caregiver for his wife, who suffers from a heart condition. He is very involved with his four children. The Court notes that many of the letters received on behalf of Mr. Ayers discussed his close relationship with his 17–year–old step-daughter, whom he adopted and upon whose life he has been an especially positive influence.

Second, the sentence imposed must reflect the seriousness of the offense, provide just punishment, and deter criminal conduct. As to the seriousness of the offense—as already stated, the magnitude of NCFE's fraud places it among the worst by a privately-held company. Mr. Ayers was an owner of NCFE and helped to direct these fraudulent activities for nearly a decade. As a result of his and his co-defendants' actions, thousands of investors were lied to and suffered considerable financial losses. Mr. Ayers, on the other hand, amassed a significant fortune during his time at NCFE. Mr. Ayers and the other principals had a business model that was capable of working properly and legal-

ly. But, as often happens in cases that appear in this Court, Mr. Ayers chose the alternate illegal route, the shortcut, to wealth. Defendant's avarice, arrogance, and hubris led to his demise. He could have operated a legitimate business, but you chose not to.

In considering the seriousness of the offense, two of the interests that Congress sought to vindicate were specific deterrence and general deterrence. Specific deterrence is intended to deter a particular defendant from reoffending. General deterrence is designed to dissuade others—those in positions of trust, those in positions of authority, those who have fiduciary duties to shareholders and investors, and those who have a duty of integrity to shareholders and investors—from engaging in similar fraudulent conduct. The message has to be sent that this type of behavior will not be countenanced to any extent and that those who chose to engage in it will be punished significantly.

The Court must, therefore, impose a sentence that will deter Mr. Ayers from again committing any offenses and will discourage other corporate executives from engaging in similar types of fraudulent conduct. At 74, this Court concludes that Mr. Ayers will not be a threat to reoffend upon his release from prison. This Court is persuaded that his age, along with the stigma, public embarrassment, and financial and other costs associated with his felony conviction will likely prevent Mr. Ayers from reoffending.

An appropriate sentence, however, will appropriately punish Mr. Ayers and communicate to other potential white-collar offenders that steep penalties will await them if they choose to follow in Mr. Ayers's footsteps. White-collar offenses—like those Mr. Ayers has been convicted of—are carried out painstakingly and deliberately and cause significant disruption to commercial affairs. Such crimes reduce confidence in the integrity of the marketplace and cause severe economic harm to individuals. As a matter of general deterrence, an appropriately stiff sentence for Mr. Ayers will send a message to other senior corporate executives that they too will face adverse consequences and criminal liability if they engage in fraudulent behavior that harms both individuals and society.

Third, the Court is required to consider the kinds of sentences available, including non-incarceration alternatives. As discussed above, in order to achieve specific and general deterrence, and to impose a punishment that is just based on the magnitude of the fraud and the number of victims affected, incarceration is an appropriate punishment.

Fourth, the Court is obligated to fashion a sentence for Mr. Ayers in line with the sentences that similarly situated offenders have received, both in this case and in other cases. The sentence that the Court imposes in this case will reflect the Court's view of the significance of Mr. Ayers's conduct in terms of the counts on which he has been convicted and which have withstood the scrutiny of the Court of Appeals. The Court will look at his conduct in the context of the overall criminal enterprise and consider the importance of his role to the conspiracy.

The Court will impose a sentence that is consistent with the sentences imposed on Mr. Ayers's co-defendants. In terms of relative conduct, Mr. Ayers was in the leadership echelon of the fraud scheme along with Mr. Poulson and Ms. Parrett. Mr. Poulson, the Chairman and Chief Executive Officer of NCFE, received thirty years for his role in the fraud scheme. Ms. Parrett, whose level of culpability is similar to that of Mr. Ayers, received 25 years after she absconded. Mr. Ayers's co-defendants, Sheri Gibson and John Sno-

ble, each received four-year terms of incarceration. While Mr. Ayers has not asked for a four-year term, he has asked for a five-year term. Both Ms. Gibson and Mr. Snoble, however, pleaded guilty and substantially cooperated with the Government's investigation and prosecution in this matter. Neither Ms. Gibson nor Mr. Snoble was the owner of the company nor the architect of the fraud scheme. They followed orders, including those of Mr. Ayers. Their situations are thus easily distinguishable.

Other defendants convicted in complex financial frauds have typically received anywhere from 5 to 25 years of incarceration, depending upon their position within the company, the nature and extent of the fraud, and whether they cooperated with the Government's investigation. Among the high-profile defendants sentenced in white-collar-fraud matters in recent years, Ayers cites Bernard Ebbers, the CEO of WorldCom, who received 25 years of imprisonment; Enron's Jeffrey Skilling, who was sentenced to 24 years of imprisonment; John and Timothy Rigas who were sentenced to 15 and 20 years respectively, for their role in the Adelphia fraud; and Samuel Israel, who received 20 years of incarceration for his role in the Bayou Hedge Fund Group Fraud.

Fifth, 18 U.S.C. § 3663A mandates that the Court order restitution. As noted, the Court determines that the monetary losses stemming from the National Century fraud total $2,894,150,500. When taking into account recoveries to date, the total outstanding losses are $2,384,147,105.09. The Court therefore concludes that Mr. Ayers and his co-defendants shall jointly and severally make restitution to the victims of their fraud in this amount.

### 4. Imposition of Sentence

■ As noted above, the Guidelines sentence in this case is life. Mr. Ayers asks the Court to impose a sentence of incarceration far lower than that. After considering the § 3553(a) factors, the Court agrees that a substantial variance from the advisory Guidelines range is warranted. As Defendant correctly points out, the harsh sentence recommended by the Guidelines is primarily driven by the loss calculation, which increases his Base Offense Level by 30 points. As has become common among district courts sentencing white-collar offenders in financial fraud cases, the Court finds that the loss calculation substantially overstates the gravity of the offense here and declines to impose a within-Guidelines sentence.

That being said, in light of the scope and complexity of the fraud; Mr. Ayers's role as the owner of NCFE; the extraordinary lengths that Mr. Ayers and his co-defendants went to conceal their real use of investor dollars; and the billions in losses that investors suffered; the Court concludes that a sentence of 240 months is appropriate. Due to Mr. Ayer's age and health, however, the Court concludes that a sentence 180 months, or 15 years, of incarceration is sufficient, but not greater than necessary, to punish Mr. Ayers, deter similar criminal conduct, promote respect for the law, and otherwise satisfy the goals of sentencing. The Court also finds that this sentence is in keeping with the sentences imposed against other criminal defendants convicted of crimes similar to Mr. Ayers's and is consistent with the sentences imposed against his co-defendants.

Accordingly, pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), and § 5G1.2(d) of the Sentencing Guidelines, it is the judgment of this Court that Mr. Ayers is sentenced to 60 months on Count 1, 60 months on Count 2, and 60 months on Count 3, with Counts 1, 2, and 3 to run consecutively, and 60 months on Counts 4, 5, 6, and 7, with Counts 4, 5, 6, and 7 to run concurrently to Counts 1

through 3, for a total of 180 months. Mr. Ayers is ordered to pay restitution pursuant to 18 U.S.C. § 3663A in the amount of $2,384,147,105.09 jointly and severally with his co-defendants until the amount is paid.

**IT IS SO ORDERED.**