RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                     *Plaintiff-Appellee*,

    *v.*

JOSHUA T. GRANT,

                     *Defendant-Appellant*.

> No. 20-4078

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:20-cr-00211-1—John R. Adams, District Judge.

Decided and Filed: October 1, 2021

Before: SUTTON, Chief Judge; McKEAGUE and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. Scott C. Zarzycki, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

McKEAGUE, Circuit Judge. Defendant Joshua Grant shot his ex-girlfriend after a night of arguing at her apartment. He fled the scene and police apprehended him nearby in possession of a gun. He later pleaded guilty to two counts of violating 18 U.S.C. § 922(g) for unlawfully possessing that firearm—one for being a convicted felon, the other for being a domestic violence misdemeanant. The district court entered judgment on both convictions and imposed concurrent 120-month sentences. Grant appeals. He challenges the entry of multiple § 922(g) convictions

and sentences for the same incident of firearm possession. He also challenges the district court's application of the cross-reference for attempted murder in calculating his Sentencing Guidelines range. For the following reasons, we REMAND with instructions to VACATE Grant's sentence on one of the § 922(g) counts and to merge the two counts of conviction into one. We AFFIRM the district court's judgment in all other respects.

I.

Shortly after midnight on September 7, 2019, officers from the Elyria Police Department arrived at Brenna Baylock's apartment on a report of shots fired. They entered the apartment and saw Baylock in the kitchen with a single gunshot wound to the right side of her chest and a large amount of blood on the floor. As officers converged on Baylock's apartment, they spotted Defendant Joshua Grant running down the street nearby. Grant surrendered and the officers confiscated a loaded .380 caliber semi-automatic handgun from his pocket. They also administered a gunshot residue kit, which later tested positive. Baylock survived the gunshot wound and eventually had surgery to remove the bullet from her shoulder blade.

Grant was subsequently indicted on two counts stemming from his possession of the .380 caliber handgun on the night of the Baylock shooting. Count One charged Grant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Two charged him with being a domestic violence misdemeanant in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Grant pleaded guilty to both counts without a plea agreement. Grant's final presentence report calculated his base offense level at 27, applying U.S.S.G. § 2A2.1(a)(2), the cross-reference for attempted murder. Grant objected to the presentence report and contended that a base offense level of 14 was appropriate, applying the cross-reference for aggravated assault, U.S.S.G. § 2A2.2.

The government called Baylock to testify at sentencing in support of applying the cross-reference for attempted murder. On the night of the shooting, Grant and Baylock, who had recently broken up, were at Baylock's apartment playing cards and drinking. Cards and drinking eventually descended into arguing and fighting. At one point, Grant punched Baylock in the head. Baylock retaliated by hitting Grant in the head with a bottle. According to Baylock, Grant

then said either, "if you do that again I will kill you," or, "I'll shoot you." R. 30 at 32. This testimony tracked Baylock's younger sister's account of the events, which the Probation Officer detailed in the presentence report. Baylock's younger sister, who was also at the apartment that night, told police that she saw Grant point a handgun at Baylock and say, "if you hit me again I'm going to shoot you." R. 18 at 4.

Grant left and returned multiple times throughout the evening. The final time Grant left, Baylock was standing in the front doorway watching him walk away toward the neighbor's house. When Grant reached the neighbor's house about a hundred feet away, he turned around, aimed, and fired a single shot at Baylock. The bullet struck her in the right side of her chest, close to the shoulder. Baylock's sister heard the gunshot and ran into the kitchen to find Baylock bleeding near the sink and holding her chest. Baylock's sister told police that Baylock then said to her, "don't tell them, he is my boyfriend, don't tell them." *Id.*

Relying on Baylock's testimony and the findings detailed in the presentence report, the district court found that Grant was the shooter and that Grant's actions demonstrated an intent to commit murder. The court overruled Grant's objection and accepted the Probation Officer's recommendation to calculate Grant's base offense level at 27, applying the cross-reference for attempted murder. It then applied a two-level enhancement for inflicting a serious bodily injury and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 26. Grant's total offense level of 26 and his criminal history category of VI resulted in a final Guidelines range of 120 to 150 months. After weighing the 18 U.S.C. § 3553(a) factors, the court imposed concurrent statutory-maximum sentences of 120 months, the low end of the Guidelines range, on both counts of conviction.

## II.

### A.

Grant first challenges the district court's entry of multiple convictions and sentences under 18 U.S.C. § 922(g). Grant did not object to the imposition of either sentence. We therefore review for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Grant submits that the district court committed plain error in entering multiple

convictions and sentences under § 922(g) for the same incident of firearm possession. The government agrees with Grant's reading of § 922(g), and so do we.

The Double Jeopardy Clause of the U.S. Constitution provides that no person may be "twice put in jeopardy" for the same offense. U.S. Const. amend V. The clause "protects not only against a second trial for the same offense, but also against multiple punishments for the same offense[.]" *Whalen v. United States*, 445 U.S. 684, 688 (1980) (citation and quotations omitted). To determine "whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple[,]" courts look to "what punishments the Legislative Branch has authorized." *Id.* (collecting cases); *see also White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009) (explaining that "current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.").

Our circuit has not "expressly addressed . . . whether Congress intended to permit multiple punishments for violations of two or more subdivisions of § 922(g)" based on a single incident of firearm possession. *United States v. Ocampo*, 919 F. Supp. 2d 898, 905–06 (E.D. Mich. 2013). But we have recognized, in an unpublished decision, that "the subdivisions of § 922(g) do not support separate sentences for a single criminal act." *United States v. Modena*, 430 F. App'x 444, 446 (6th Cir. 2011). And every circuit to address this question unanimously agrees that § 922(g) does not permit multiple punishments based on the statute's different subdivisions for a single incident of firearm possession. *United States v. Parker*, 508 F.3d 434, 440 (7th Cir. 2007); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) (en banc) (per curiam); *United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000); *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998); *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997); *United States v. Munoz–Romo*, 989 F.2d 757, 759–60 (5th Cir. 1993); *United States v. Winchester*, 916 F.2d 601, 607–08 (11th Cir. 1990).

The government may "pursue multiple theories of violation at trial," but "only one conviction may result under § 922(g) for a single incident of possession, even though the defendant may belong to more than one disqualified class." *Parker*, 508 F.3d at 440 (internal citation omitted); *cf. United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990) (separate

convictions for simultaneous possession of a firearm and ammunition under § 922(g)(1) are multiplicitous and merge at sentencing). Thus, this statute does not permit a court to, as the district court did here, "impose multiple punishments on a defendant who commits one act of possession yet is both a felon and a domestic-violence misdemeanant." *Modena*, 430 F. App'x at 446. Doing so was plain error. *See United States v. Ehle*, 640 F.3d 689, 699 (6th Cir. 2011) (imposing multiple punishments for the same offense in violation of the Double Jeopardy Clause constitutes plain error). Even though the two sentences are concurrent, "[o]ne of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense." *Ball v. United States*, 470 U.S. 856, 864 (1985) (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)).

B.

Grant also challenges the procedural reasonableness of his sentence. He argues that the district court erred in finding that he intended to commit murder and that the court therefore improperly applied the cross-reference for attempted murder in calculating his base offense level under the Guidelines. We disagree.

When evaluating the procedural reasonableness of a sentence, we review the district court's interpretation of the Guidelines de novo, and we review the court's factual findings for clear error. *United States v. Cole*, 359 F.3d 420, 425 (6th Cir. 2004). Grant's challenge to the district court's factual findings therefore triggers the more deferential clear-error review. *See United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021). Under clear-error review, we affirm a district court's finding of fact so long as the finding is "plausible in light of the record viewed in its entirety[.]" *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We begin with the Sentencing Guidelines. Section 2K2.1(c)(1)(A) specifies that if the "defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above[.]" U.S.S.G. § 2K2.1(c)(1)(A). Section 2X1.1 in turn leads us to § 2A2.1, the guideline for "Assault with Attempt to Commit Murder; Attempted

Murder." Under that guideline, a defendant's base offense level is "33, if the object of the offense would have constituted first degree murder; or 27, otherwise." *Id.* § 2A2.1(a)(1)–(2).

In determining what constitutes "first degree murder," the Guidelines refer us to the federal murder statute. *Id.* § 2A2.1 cmt. 1. Under 18 U.S.C. § 1111(a), "[m]urder is the unlawful killing of a human being with malice aforethought." First-degree murder requires either premeditation or killing during the commission of certain felonies; all "other murder is murder in the second degree." *Id.* This case concerns attempted murder in the second degree.

To prove an attempt offense generally, the government must prove that the defendant acted with a specific intent to commit the crime. *United States v. Wesley*, 417 F.3d 612, 618–19 (6th Cir. 2005). When it comes to attempted murder, however, the government must prove that the defendant acted with a "specific intent to kill"—a more culpable mental state than the "malice aforethought" required for murder. *Caston*, 851 F. App'x at 564 (citing *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991)). "Malice aforethought" encompasses the state-of-mind of recklessness, a gross deviation from the standard of care such that the defendant "must have been aware of a serious risk of death or serious bodily injury." *Id.* at 563 (citing *United States v. Sheffey*, 57 F.3d 1419, 1430 (6th Cir. 1995)). But "[o]ne cannot intend to commit a reckless" murder. *Id.* at 564 (citing *United States v. Turner*, 436 F. App'x 631, 631 (6th Cir. 2011)). Thus, for the district court in this case to apply the cross-reference for attempted murder in the second degree, the government needed to show that Grant had a specific intent to kill when he shot Baylock.

The district court found that Grant acted with a specific "intent to commit murder" when he shot Baylock. R. 30 at 37. That finding was not clear error. Grant aimed the gun in Baylock's direction and fired. This fact alone supports a finding of specific intent, as "we have upheld a district court's finding of the intent to kill based solely on the fact that the defendant shot in the victim's direction such that the bullet could have struck [her]." *Id.* (citing *United States v. James*, 575 F. App'x 588, 590, 596–97 (6th Cir. 2014)). Grant also threatened to shoot Baylock earlier in the night. Although the district court stated only that Grant acted with an intent to *commit murder*, rather than an intent to *kill*, Grant "makes no claim that the district

court failed to find that he acted with the required intent.  He challenges only the evidentiary support for that required factual finding." *Id.* at 564.

None of Grant's "factual arguments can overcome the deferential clear-error standard." *Id.* at 561.  Grant argues that the evidence shows only an aggravated assault, and not an intent to kill, because he and Baylock were drinking and fighting throughout the night.  However, Grant had already walked roughly a hundred feet away from the apartment when he turned around and shot Baylock.  As the district court put it: "This was not in the heat of an argument. He had left. He was outside the residence, and he turned and fired."  R. 30 at 44.  At most, Grant merely offers a "competing view" that the evidence shows only an aggravated assault; "he has not demonstrated that his view of the evidence is the *only* view."  *Caston*, 851 F. App'x at 564 (quoting *United States v. Bradford*, 822 F. App'x 335, 339 (6th Cir. 2020)).

Because the district court did not clearly err in finding that Grant acted with specific intent to commit murder when he shot Baylock, the court correctly applied the U.S.S.G. § 2A2.1(a)(2) cross-reference for attempted second-degree murder in calculating Grant's offense level.

## C.

That leaves us with what to do next.  If we issue a general remand, then the procedural reasonableness challenge we just discussed would become moot, and the district court could engage in a de novo resentencing.  Grant invites us to take this approach, but we decline.

The courts of appeals have "broad discretion" under 28 U.S.C. § 2106 to issue general or limited remands.  *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).  Of the circuits to address multiplicitous convictions under § 922(g), four have remanded to the district court for resentencing based on a single count of conviction.  *See Richardson*, 439 F.3d at 422–23 (8th Cir.); *Munoz-Romo*, 989 F.2d at 759–60 (5th Cir.); *Winchester*, 916 F.2d at 607–08 (11th Cir.); *Dunford*, 148 F.3d at 390 (4th Cir.).  Three others have instead issued a limited remand. *Parker*, 508 F.3d at 442 (7th Cir.); *Shea*, 211 F.3d at 675–76 (1st Cir.); *Johnson*, 130 F.3d at 1430–31 (10th Cir.).  But none of these cases provide much help on this question because the remand was not in dispute, so we turn to general principles governing remands in the sentencing context.

The "particular intricacies of each case will influence" our discretion on whether to issue a general or a limited remand. *Campbell*, 168 F.3d at 266. In the sentencing context, a general remand may be more desirable when the issues affecting remand are not fixed independently and may alter the district court's calculation of a sentence on remand. *Id.* at 268. To the contrary, when a "discrete issue" causes the need for remand, "complete reconsideration on resentencing" may be "unnecessary and unwarranted." *Id.* at 266. In such cases, "judicial economy favors limited remands" by "limit[ing] the possibility that this court will be confronted repeatedly with the same defendant, and the same sentence." *Id.* (quoting *United States v. Moore*, 131 F.3d 595, 599 (6th Cir. 1997)). This is one of those "discrete issue" cases.

A limited remand is appropriate here. The district court correctly calculated a Guidelines range of 120 to 150 months and concluded that the statutory maximum, 120 months, was clearly warranted. The record contains no indication that Grant's multiplicitous convictions affected the district court's Guidelines calculation or its balancing of the § 3553(a) factors in any way. Remanding for resentencing would likely lead to us confronting "the same defendant, and the same sentence" in a subsequent appeal. *Id.* Because the sentences were imposed concurrently, and because the entry of multiple convictions did not affect the court's sentencing calculus, a general remand for resentencing is not necessary to correct the district court's error. *See, e.g.*, *United States v. Mazel*, 603 F. App'x 379, 383 (6th Cir. 2015) ("[R]emanding for resentencing is not warranted in this case . . . the district court ordered that Mazel's convictions for possession and receipt of child pornography run concurrently, rather than consecutively." (internal citation omitted)).

III.

We REMAND with instructions to VACATE Grant's sentence on one of the § 922(g) counts and to merge the two counts of conviction into one. We AFFIRM the district court's judgment in all other respects.