RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee*,

    *v.*

MAURICE A. TAYLOR,

               *Defendant-Appellant*.

No. 23-5064

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:21-cr-00101-1—Danny C. Reeves, Chief District Judge.

Decided and Filed: October 25, 2023

Before: BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Steven D. Jaeger, THE JAEGER FIRM, PLLC, Erlanger, Kentucky on the merits brief, HEMMER WESSELS MCMURTRY, PLLC, Ft. Mitchell, Kentucky on the reply brief, for Appellant. Lauren Tanner Bradley, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

GRIFFIN, Circuit Judge.

Defendant Maurice Taylor pleaded guilty to two drug-trafficking crimes, and the district court sentenced him to 385 months' imprisonment. In this appeal, Taylor contends that the district court erroneously found applicable three sentencing enhancements: maintaining a drug

premises; being a leader/organizer; and using force, friendship, or affection to involve another in a conspiracy.  We affirm.

I.

Kentucky law enforcement officials learned that Taylor was part of a drug-distribution network.  They began surveilling houses associated with him, and ultimately seized several kilograms of cocaine and fentanyl.  A grand jury charged Taylor, along with many other individuals, with numerous conspiracy- and drug-related crimes.  He subsequently pleaded guilty to two crimes pursuant to a plea agreement:  conspiring to possess with intent to distribute and to distribute five or more kilograms of cocaine and four hundred or more grams of fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 846; and possession with intent to distribute five hundred grams or more of cocaine in violation of § 841(a).

The presentence investigation report recommended the district court apply three sentencing enhancements:  (1) maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12); (2) being an organizer or leader of a criminal activity that involved five or more participants under U.S.S.G. § 3B1.1(a); and (3) using fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of a controlled substance under U.S.S.G. § 2D1.1(b)(16)(A).  Over defendant's objections and following testimony from several witnesses, the district court applied those enhancements, calculated his Guidelines range to be 324 to 405 months, and sentenced him to a prison term of 385 months.  Taylor challenges only the application of these enhancements on appeal.

II.

Whether a district court properly applied a sentencing enhancement is a matter of procedural reasonableness.  *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015).  When evaluating a sentence's procedural reasonableness, we review the district court's interpretation of the Guidelines de novo, and its factual findings for clear error.  *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021).  "Under clear-error review, we affirm a district court's finding of fact so long as the finding is plausible in light of the record viewed in its entirety."  *Id.* (internal

quotation marks and brackets omitted). We have, however, not spoken with a uniform voice when reviewing mixed questions of law and fact concerning sentencing enhancements. *See, e.g.*, *United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014). That debate does not matter here, for under any review standard, Taylor's appeal is without merit.

A.

Section 2D1.1(b)(12) of the Guidelines enhances a defendant's base offense level for drug crimes if a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." We set forth briefly the facts supporting the district court's application of this enhancement.

As part of his plea agreement, Taylor stipulated to several facts concerning his connection to two of his co-conspirators' residences that provided some of the foundation for the district court's application of this enhancement. Taylor agreed that he used Tannare Brown's and Rae'Shawna Campbell's respective residences to facilitate his distribution of fentanyl and cocaine. For purposes of resolving Taylor's appeal, we will focus on Campbell's residence.[1]

Taylor's plea agreement established that, in 2021, he "brought over the controlled substances in a duffel bag and stored them in a closet of Campbell's residence"; he and other co-conspirators would access her house to "pick up" the drugs; and he arranged for another co-conspirator to use her garage to "unload drugs from vehicles." Law enforcement officials eventually apprehended Taylor leaving her house "with an item under his shirt"—one kilogram of cocaine. They then searched the house and found a duffle bag in the living-room closet containing nearly eight kilograms of fentanyl.

Campbell testified at Taylor's sentencing hearing, filling in more detail about Taylor's use of her residence as a "drug house." She stated that the two dated in 2019, and during that year, she discovered that he stored at her home, without her consent, $600,000 worth of heroin, which he ultimately removed at her insistence. They resumed their relationship in 2021, and he

---

[1]Because we conclude the district court did not err in determining that Taylor maintained Campbell's residence as a drug premises, we need not consider its similar conclusion regarding Taylor's use of Brown's residence. Nor do we address the government's alternative (and apparently new-on-appeal) argument that Campbell's co-conspirator status is a separate reason to affirm the district court's application of this enhancement.

again used her house to store distribution-quantity levels of drugs. More specifically, she testified that he insisted he have access to her house, telling her that "he needed [her] to hold something there." When Campbell initially refused, Taylor pushed back: "[T]hat's when he said I didn't know what he had in the house. He said he could have shit buried in the ground." In Campbell's mind, his response meant that she was left with no "choice" but to let him use her house to stash his drugs: "I loved him and I believed him when he said he loves me, and also because I was scared. . . . I knew that he had people that were watching and I also knew that there were [others] . . . watching as well." That is, she did not object further because she "knew that [she was] in danger."

Although Taylor did not have a key to her house at that time, he would tell her when he needed access to the house and she would leave it unlocked. He did so ten to fifteen times. Sometimes Taylor would come over, and other times, other co-conspirators would visit her house or use her garage.

Based on this testimony and other evidence, the district court concluded the drug-premises enhancement applied. It "completely credit[ed]" Campbell's testimony, finding "she was essentially blackmailed beginning in early 2021 by Mr. Taylor, that if she didn't allow him to use that premises there, that he had drugs stored there and bad things would happen to her" and that "she had to leave her house open" for him to use. And Taylor, concluded the district court, "took advantage of that, used her premises, either picked up or delivered or had delivered drugs to that location ten to [fifteen] times from January through . . . August" 2021.

The "drug-house enhancement applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). Taylor does not contest the first element, and the third is not debatable—his storage of kilograms of cocaine and fentanyl at Campbell's residence was one of his "primary or principal uses for the premises." § 2D1.1 cmt. n.17; *see also Bell*, 766 F.3d at 637 ("At bottom, the question is whether [the] home played a significant part in distributing drugs.") (internal quotation marks omitted).

Taylor's primary argument is that he did not "maintain" that premises given that he did not live at or have a possessory interest in Campbell's residence. That much is true: he did not reside there and no documents—such as a mortgage, lease, or utility agreement—tied him to that property. But "the maintaining-a-premises enhancement does not come with a Statute of Frauds defense." *United States v. Hernandez*, 721 F. App'x 479, 485 (6th Cir. 2018). "To hold otherwise," we have commented, "would mean that a defendant could run a drug operation in a[] . . . house without triggering the enhancement so long as he was not the house's lawful owner." *United States v. Hill*, 2023 WL 152474, at *3 (6th Cir. Jan. 11, 2023). Rather, even without a "legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control." *Hernandez*, 721 F. App'x at 484; *see also United States v. Broadnax*, 777 F. App'x 137, 141 (6th Cir. 2019); U.S.S.G. § 2D1.1 cmt. n.17 ("Among the factors the court should consider in determining whether the defendant 'maintained' the premises are . . . the extent to which the defendant controlled access to, or activities at, the premises."). That control need not be either exclusive or continuous. *See Hernandez*, 721 F. App'x at 485 ("The fact that others could have used the warehouse in-between the three shipments is irrelevant. What matters, instead, is Hernandez's relationship to the site at the times he used it."). In interpreting 18 U.S.C. § 856(a)(1)'s analogous maintenance requirement, we have commented that "[a]cts that evidence 'maintenance' are such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity." *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010) (internal quotation marks omitted).

Based on this record, the district court did not clearly err in finding that Taylor exerted sufficient control over Campbell's residence: he threatened Campbell, leaving her no choice but to give him and his other associates on-demand use of her residence for nearly a year to store kilograms of cocaine and fentanyl. That amount of exerted authority demonstrates Taylor was "more than just a casual visitor." *Hernandez*, 721 F. App'x at 484 (citation omitted). Perhaps Taylor, as he insists, was just "ask[ing] for access to the premises, which could have been denied." The district court concluded to the contrary, deeming Campbell's testimony to be "100 percent" credible. Giving due deference to the district court's credibility determination, *see*

*United States v. Abdalla*, 972 F.3d 838, 851 (6th Cir. 2020), we find no error in the application of the drug-house enhancement.

B.

Defendant next claims the district court erroneously applied the aggravating-role enhancement under U.S.S.G. § 3B1.1(a). That section enhances a defendant's base offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Taylor disputes only his leadership status, which focuses on

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

§ 3B1.1(a) cmt. n.4. A defendant need only "be a leader of 'one or more other participants' to qualify for the enhancement." *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013) (quoting § 3B1.1(a) cmt. n.2).

The district court applied this enhancement by concluding Taylor "was involved in all levels overseeing the drug trafficking organization, as well as the recruitment of accomplices." Specifically, the court credited testimony given by a fellow co-conspirator, Shad Wilson, who stated he received and then distributed large quantities of drugs and cash at Taylor's "direction" on "[s]everal different occasions." For instance, Wilson testified that Taylor "sent" him to Campbell's house to "pick up something"—a bag of fentanyl—which Wilson then "[d]ropped . . . off to different people" in exchange for money. Taylor guided Wilson during all aspects of that transaction, telling him to go to Campbell's house and to whom to give the fentanyl and the resulting cash proceeds.

Given the various testimony linking Taylor's role in sitting atop his distribution network, we discern no error in the district court's application of the leadership enhancement. True, Taylor may not have been—to use his words—the conspiracy's overall "architect," but even if that is so, Taylor still qualifies for the enhancement. *See* U.S.S.G. § 3B1.1 cmt. n.4 ("There can,

of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.").  The record plainly establishes he led several of the conspiracy's participants.

C.

Taylor disputes one final enhancement:  another special-offense characteristic under U.S.S.G. § 2D1.1(b)(16)(A).  Although our caselaw concerning this enhancement is nonexistent, our approach is not—we interpret the Guidelines like a statute, looking to the plain language to discern meaning.  *See, e.g.*, *United States v. Oliver*, 919 F.3d 393, 400 (6th Cir. 2019).  This Guideline provides that if a "defendant receives an adjustment under § 3B1.1 (Aggravating Role)," the base offense level is to be increased if:

>  (i)   "the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances,"
>
>  (ii)  "the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances," and
>
>  (iii) "the individual had minimal knowledge of the scope and structure of the enterprise."

§ 2D1.1(b)(16)(A).  The district court found this enhancement appropriate due to its application of the leadership/organizer enhancement, and its finding that (i) Taylor used fear, friendship, and affection to force Campbell to store drugs at her residence, (ii) Campbell received no compensation for his "forcing her to allow him to utilize her residence," and (iii) Campbell had nothing "more than minimal knowledge about the structure of . . . Taylor's enterprise or its scope."[2]  Taylor asserts error concerning only the first and third elements.

Defendant first concedes that Campbell assisted him because she "believed him when he said he loves me," but he contends that this testimony was insufficient because Campbell did not identify a specific "overt force or threat[]" demonstrating her fear of him.  But Campbell testified

---

[2]Like the drug-premises enhancement, the district court made a similar finding concerning Taylor's use of friendship to store drugs at Brown's residence.  But we again need not address that finding given our conclusion that the district court appropriately applied the enhancement concerning Taylor's use of fear to involve Campbell in the conspiracy.

that she knew that Taylor "had people that were watching" her. And the district court found credible Campbell's testimony to the effect that Taylor had "essentially blackmailed" her, leaving her so "scared" that she felt she had no choice in whether he used her home to store drugs. Taylor's argument inappropriately discounts the district court's credibility determination. *See Abdalla*, 972 F.3d at 851.

Taylor also insists that the third element is not satisfied because Campbell had more than "minimal knowledge" of the enterprise. § 2D1.1(b)(16)(A). It is true she once found a distribution quantity of drugs at her house, but she did not know Taylor had stored drugs there at that time. And she knew that Taylor and others accessed her house on several occasions to store drugs, but she took significant steps to distance herself from these occasions—she left the door to her house unlocked, allowed access only to her living room closet, and did not observe or directly participate in Taylor's or his co-conspirators' activities while they were in her house. On this record, the district court did not clearly err in finding that Campbell had nothing more than a minimal understanding of the scope and structure of Taylor's criminal enterprise.

III.

We affirm the district court's judgment.