22-1361 (L)
*United States v. Passley*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand twenty-three.

PRESENT:

> JOSÉ A. CABRANES,
> RICHARD J. SULLIVAN,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

      *Appellee,*

v.

CORDERO PASSLEY,

      *Defendant-Appellant.*

Nos. 22-1361 (L),
22-1368 (Con)

---

**For Defendant-Appellant:**          JEREMY GUTMAN, New York, NY.

**For Appellee:**                   ADAM TOPOROVSKY (David G. James, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from judgments of the United States District Court for the Eastern District of New York (William F. Kuntz, II, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Cordero Passley appeals from a June 14, 2022 judgment following his guilty plea to unlawfully possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), for which he received a sentence of 120 months' imprisonment. On appeal, Passley challenges the district court's application of an enhancement under the United States Sentencing Guidelines for using the firearm during a road-rage incident in which Passley attempted to murder the driver of a van who refused to let Passley's vehicle change lanes, as well as the procedural reasonableness of the district court's calculation of his criminal history category.

2

Passley also appeals a second judgment, issued on the same date, imposing a twenty-four-month term of imprisonment, to run consecutive to the sentence on the section 922(g) conviction, for his violation of the conditions of supervised release imposed as part of a prior sentence and based on the same underlying conduct as the section 922(g) conviction. On appeal, he argues that this sentence was procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.    Sentencing Enhancement for Attempted Murder

In determining the sentence for Passley's section 922(g) conviction, the district court concluded, after a sentencing hearing, that Passley was subject to the enhancement for using a firearm "in connection with the commission or attempted commission of another offense," U.S.S.G. § 2K2.1(c)(1), namely, attempted first-degree murder under U.S.S.G. § 2A2.1(a)(1). When reviewing "a district court's application of the Guidelines to the specific facts of a case," we follow an "either/or approach, adopting a *de novo* standard of review when the district court's application determination was primarily legal in nature, and adopting a clear[-]error approach when the determination was primarily factual." *United States v. Gotti*, 459 F.3d 296, 349 (2d Cir. 2006) (internal quotation marks omitted).

3

The government bears the burden of proving, by a preponderance of the evidence, all facts relevant to the Guidelines calculation used at sentencing. *See United States v. Concepcion*, 983 F.2d 369, 388 (2d Cir. 1992).

Passley first contends that the district court erred by finding that there was sufficient evidence that he acted with a specific intent to kill the victim. Under the federal murder statute, murder is defined as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111; *see also* U.S.S.G. § 2A2.1, cmt. n.1. First-degree murder is murder that is committed (1) by "lying in wait, or [by] any other kind of willful, deliberate, malicious, and premeditated killing," (2) during the course of particular felonies, or (3) "from a premeditated design unlawfully and maliciously to effect the death of any human being other than [the one] who is killed." 18 U.S.C. § 1111. "Any other murder is murder in the second degree." *Id.* § 1111. Attempted murder in *either* degree "requires [both] a specific intent to kill," *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) (internal quotation marks omitted), and "conduct amounting to a 'substantial step' towards the commission of the crime," *United States v. Martinez*, 775 F.2d 31, 35 (2d Cir. 1985).

Here, the evidence adequately supported the district court's finding that Passley fired his gun with a specific intent to kill. Indeed, the evidence introduced during the sentencing hearing demonstrated that (1) Passley verbally threatened the driver of the van, Lester Brown, and his passenger, Alfred Bonner (together, the "Victims"), after Brown refused to make way for Passley's car to enter the van's lane; (2) Passley pulled up next to the Victims' van, took out a handgun, and fired into the side of the van; and (3) the bullet from Passley's firearm hit a metal plate next to the top of the seatbelt holder on the driver's side of the van, which was located only inches from Brown's head.[1] We cannot say that the district court erred in concluding that this evidence – showing that Passley repeatedly shouted threats to kill Brown, fired a deadly weapon at close range, and hit a metal plate close to Brown's head – was sufficient to establish by a preponderance of the evidence that Passley discharged his firearm with the specific intent to kill Brown.

Passley's principal response is that he could not have had the specific intent to kill because he fired only one shot even though he had additional rounds in the firearm and an operational weapon. But Passley has cited no authority for the

---

[1] The evidence on which the district court relied included, among other things, images showing the bullet's trajectory and the site of impact, Brown's and Bonner's grand-jury testimony, and statements that Brown and Bonner gave to the police immediately following the incident.

5

proposition that specific intent requires the firing of multiple shots at an intended victim, and we are aware of none ourselves. *Cf. United States v. Grant*, 15 F.4th 452, 456, 458 (6th Cir. 2021) (finding no clear error in district court's determination that defendant had a specific intent to kill where defendant fired one shot at the victim); *see also United States v. Reid*, No. 22-1279, 2023 WL 8469353, at *1 (2d Cir. Dec. 7, 2023) (rejecting the same argument Passley raises on appeal). Nor are we persuaded to adopt such a theory.

Passley next argues that the district court erred by applying the Guidelines section for attempted murder *in the first degree*. But the presentence investigation report (the "PSR") and evidence from the sentencing hearing indicated that Passley "yell[ed] at [Brown] and threaten[ed] to kill him" "[w]hen [Brown] would not let [Passley] cut in." PSR ¶ 4. Passley then inserted his car into the neighboring lane – "block[ing]" the van so it "couldn't move" – and exited his vehicle while "grabbing his pocket . . . like[] he had a weapon" as he argued with the Victims outside of the vehicles. Gov't App'x at 17–18. Subsequently, a female passenger in Passley's car "pull[ed] [him] back into their automobile," PSR ¶ 4, warning him that he could go to jail. Critically, Passley then "dropped off the woman and a

6

child[] who had been in his automobile." *Id.* ¶ 5.[2] After that, he drove up behind the van, followed the Victims through a series of turns, and "pulled up alongside the Victims' van." *Id.* It was only then, about three to four minutes after the initial incident, that Passley shot a "firearm at the Victims," with the bullet lodging "just inches from [Brown's] head." *Id.* On these facts, we agree with the district court that Passley's conduct was sufficiently "willful, deliberate, malicious, and premeditated" to constitute attempted murder in the first degree under 18 U.S.C. § 1111 and to warrant the enhancement under U.S.S.G. § 2A2.1(a)(1).

## II. Procedural and Substantive Reasonableness

Passley next challenges the procedural and substantive reasonableness of his sentences. "Criminal sentences are generally reviewed for reasonableness, which requires an examination of . . . the procedure employed in arriving at the sentence (procedural reasonableness)" and "the length of the sentence (substantive reasonableness)." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (internal quotation marks omitted). We review a district court's sentence "under

---

[2] Passley disputes whether the woman and child left his vehicle at his direction or whether they left on their own accord. But whether or not the passengers left the vehicle at Passley's direction does not alter our consideration of this evidence as relevant to the deliberateness of Passley's conduct in evaluating whether it constituted attempted murder in the first degree.

7

a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

Passley first contends that the district court committed procedural error with respect to his section 922(g) sentence by (1) assigning two criminal history points under U.S.S.G. § 4A1.1(b) to a prior state-court sentence, thereby placing him in Criminal History Category IV, and (2) not granting his request for a downward departure under U.S.S.G. § 4A1.3(b) because his "criminal history category substantially over-represent[ed] the seriousness of [his] criminal history."[3] Passley Br. at 35–37. We need not reach these issues, however, given our determination that the district court was correct in applying U.S.S.G. § 2A2.1(a)(1) – the Guidelines section for attempted murder in the first degree – which resulted in a total offense level of 30. Based on this offense level, Passley's Guidelines range would have been the statutory maximum sentence of 120 months' imprisonment regardless of whether Passley was determined to be in Criminal History Category III or IV. *See* U.S.S.G. § 5G1.1(a).

---

[3] Passley argues that the district court erred by assigning one extra point under U.S.S.G. § 4A1.1, and that Criminal History Category III "should be recognized as the appropriate basis for determining Passley's Guidelines imprisonment range." Passley Br. at 37.

Passley next argues that his above-Guidelines sentence for his violation of supervised release was procedurally and substantively unreasonable. But the district court's imposition of a twenty-four-month sentence for Passley's violation of supervised release was not procedurally unreasonable because the district court properly applied the 18 U.S.C. § 3553(a) factors to the facts of this case; accurately calculated the applicable Guidelines range; appropriately recognized that the Guidelines are not mandatory; and articulated specific reasons for the sentence it imposed. *See Chu*, 714 F.3d at 746. Indeed, the district court specifically addressed a variety of mitigating factors – including Passley's physical ailments, seizures, mental health disorders, and substance-abuse problems – while stressing, just before issuing its sentence, the seriousness of the felon-in-possession offense.

Nor can we say that the twenty-four-month sentence for Passley's violation of supervised release, which was three months longer than the relevant Guidelines range of fifteen to twenty-one months, was substantively unreasonable. Based on "the totality of the circumstances" surrounding Passley's supervised-release violation, *id.* – including the fact that "[he] continue[d] to ignore the Probation Department's efforts" "to assist [him] to come into compliance with his conditions [of supervised release]," Passley App'x at 55, not to mention the egregious

9

circumstances surrounding the shooting itself – it cannot be said that the twenty-four-month sentence imposed here fell outside "the range of permissible decisions" available to the sentencing court, *Chu*, 714 F.3d at 746 (internal quotation marks omitted).[4]

We have considered Passley's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] It bears noting that the district court's decision to run the twenty-four-month sentence on the violation consecutive to the ten-year sentence on the section 922(g) conviction resulted in an aggregate sentence of 144 months, which was well below the average sentence imposed for federal defendants convicted of attempted murder in the first degree in recent years.  *See United States v. Green*, No. 22-800, 2023 WL 7180645, at *2 (2d Cir. Nov. 1, 2023) ("In 2021, the average sentence imposed under [section] 2A2.1 – the Guideline for attempted first-degree murder – was 155 months.").