NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0129n.06

No. 24-3492

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 05, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| JAMIL BARKER, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; GRIFFIN and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Jamil Barker pleaded guilty to possessing with the intent to distribute fentanyl and methamphetamine. At his sentencing, the district court applied the Sentencing Guidelines' drug-house enhancement over Barker's objection. Barker now challenges the application of that enhancement on appeal. We affirm.

I.

In June 2023, a confidential informant reported to FBI task force officers that Barker, his brother, and other associates were using a home located at 4086 Brenton Drive in Dayton, Ohio, to store, mix, and sell fentanyl. The informant also detailed that Barker frequented the home, "coming and going from the residence to conduct car-to-car drug deals with customers in the area." Officers then began surveillance of the home. One day, they saw one of Barker's associates leave the Brenton Drive home and then conduct a drug sale; that same day, they observed Barker exit the home in sleepwear, place a trash can by the curb for pickup, remain in the driveway until the

garbage truck collected the trash, and bring the trash can back inside—indicating to the officers that he resided there.

Based on this information, task force officers obtained a search warrant for the residence. As officers arrived at the home to execute the warrant in August 2023, Barker and his associate jumped out of a window on the backside of the house and attempted to flee, but law enforcement quickly apprehended and arrested them. At the time of his arrest, Barker possessed two cell phones, both of which appeared to contain text messages arranging drug sales. And when officers searched the home, they recovered distribution quantities of multiple kinds of controlled substances, drug paraphernalia, and a stolen firearm.

For this conduct, Barker ultimately pleaded guilty to possessing with the intent to distribute fentanyl and methamphetamine. In his plea agreement, Barker admitted that he "obtained large amounts of [fentanyl and methamphetamine] that [he] stored at a home in Dayton, Ohio," which he then sold to customers in the area. And he admitted that he arranged drug sales "[f]rom the home."

The probation office prepared a presentence investigation report (PSR), which recommended applying the drug-house enhancement under U.S.S.G. § 2D1.1(b)(12). The PSR noted that Barker stored and mixed fentanyl and other narcotics at 4086 Brenton Drive, that he frequently arranged drug deals from the home, and that he returned to the home upon completion of the sales. Barker objected to the application of the drug-house enhancement because he neither rented nor owned the premises, and, in his view, being seen and arrested at the house was not enough to constitute "maintenance" of the premises for purposes of § 2D1.1(b)(12).

At sentencing, FBI task force officer Frederick Zollers, the affiant who supported the search warrant for the Brenton Drive home and who participated in the execution of the warrant, testified

as to officers' surveillance efforts prior to executing the warrant: they observed Barker frequent and control access to the home and take the trash out early in the morning. Zollers explained that during the search of the home, officers found—along with the drugs and drug paraphernalia—documents bearing the name of Barker's brother, with whom Barker was believed to reside at the Brenton Drive house. Zollers further interpreted several text messages on the phones that officers seized that appeared to facilitate drug transactions from April to August 2023. In those messages, Barker twice texted presumed customers the address to the Brenton Drive home. He told other customers to meet him at the "house" after they placed a drug order, which Zollers interpreted to mean 4086 Brenton Drive, and that he was located "[o]ff Salem," which is a main road near Brenton Drive. Also on one of the phones was a photograph of Barker in front of the home, taken in July 2023.

Given the admitted facts in the plea agreement, Zollers's testimony, and the text messages and photographs admitted at sentencing, the district court found that the government proved the applicability of the drug-house enhancement by a preponderance of the evidence. The court then sentenced Barker to a below-Guidelines term of imprisonment of 120 months. Barker timely appealed.

## II.

### A.

The government bears the burden of establishing by a preponderance of the evidence that a sentencing enhancement applies. *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012). "Whether a district court properly applied a sentencing enhancement is a matter of procedural reasonableness." *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023). When evaluating procedural reasonableness, "we review the district court's interpretation of the Guidelines de novo,

and its factual findings for clear error." *Id.* "Under clear-error review, we affirm a district court's finding of fact so long as the finding is plausible in light of the record viewed in its entirety." *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (internal quotation marks and brackets omitted). There exists an intra-circuit split, however, over the proper standard to apply when reviewing mixed questions of law and fact concerning sentencing enhancements. *See United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014) (recognizing the de novo versus clear error split). Here, because the application of the drug-house enhancement was not erroneous under either standard, we need not resolve the split.

B.

Section 2D1.1(b)(12) of the Sentencing Guidelines provides for a two-level enhancement for drug crimes if the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *See United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013) ("[T]he drug-house enhancement applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance."). With respect to the "maintaining" element, the only element at issue here, we must consider "whether the defendant held a possessory interest in . . . the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17. If the defendant does not have a "legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control." *Taylor*, 85 F.4th at 390 (citation omitted). While de facto control requires "something more than the act of distribution from the premises," it can include controlling, supervising, protecting, and maintaining continuity at the location. *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018).

Barker's arguments that he did not "maintain" the Brenton Drive residence fall short. As shown by his text messages, Barker conducted drug-sales activity from the home from late April to early August 2023. He frequently left the home, where he and his associates stored drugs, to sell those drugs and would then return after the transactions. And given that he texted the address of the Brenton Drive house to multiple customers, he likely sold directly out of the home as well. Moreover, Barker appeared to control access to the home, as he could come and go as he pleased and was comfortable enough at the residence to take the trash out (after likely spending the night there). The testimony and exhibits admitted at sentencing, which placed Barker at the home on several occasions, established that Barker was "more than just a casual visitor." *See Taylor*, 85 F.4th at 390 (citation omitted). And law enforcement's search of the residence—around which he was arrested after attempting to flee—yielded distribution quantities of drugs, confirming officers' suspicions that Barker and his brother were using the house for their drug-trafficking business. Indeed, Barker's own plea agreement admitted that he used this residence to "store[]" drugs that he "intended to distribute to people in [the] area."

True, Barker did not have a possessory or ownership interest in the Brenton Drive house, but as shown by this evidence, the government proved by a preponderance of the evidence that Barker at least controlled, supervised, and maintained continuity at the premises from April to August 2023, sufficiently proving de facto control. The district court therefore did not err in applying the drug-house enhancement to Barker's sentence.

### III.

We affirm the district court's judgment.