NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0198n.06

Case No. 24-5438

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 11, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| KATARENA MOORE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SUTTON, Chief Judge; BATCHELDER and RITZ, Circuit Judges.

SUTTON, Chief Judge. Katarena Shaianna Moore fired four shots at Martez Smith's car while he was inside. After Moore pleaded guilty to possessing a firearm as a felon, the district court found that she attempted to commit first-degree murder and applied a Guidelines cross-reference accordingly. Seeing no clear error, we affirm.

I.

At age 27, Moore began a relationship with Smith. It was not a good one. As Moore tells it, Smith would beat her, strangle her, and threaten to kill her. He once attempted to throw hot grease on her at a Wendy's restaurant, and once stole her car in order to commit a robbery. When Moore moved to a new residence, Smith found it and tried to kick the door in. She ended the relationship in November 2018 to escape the abuse.

The end of the relationship marks the start of this case. In December 2018, Moore chanced upon Smith at a gas station. Armed with a loaded handgun, she paced back and forth while yelling at him about other women with whom he was romantically involved. Smith's friends scattered.

At some point, Moore started shooting. Detective Wade Johnson, who arrived on the scene after the incident, told the rest of the story as the only person who testified at her sentencing hearing. After interviewing witnesses and reviewing the gas station's security camera footage, Detective Johnson concluded that Moore had walked out of the camera's frame and fired four rounds toward Smith's vehicle, each roughly a second apart. One bullet left a hole in the hood. Smith tried to drive away but hit a parked car, forcing him to exit and leave the scene on foot. Moore drove off too but not before Smith picked up a trash can and threw it against the front of her vehicle.

Because Moore had a prior felony theft conviction, prosecutors charged her with, and she pleaded guilty to, possessing a firearm as a felon. *See* 18 U.S.C. § 922(g). At sentencing, the district court concluded that Moore possessed the gun in an attempt to commit first-degree murder by shooting Smith. Because her conduct involved the "attempted commission of another offense," U.S.S.G. § 2K2.1(c)(1), the court applied the relevant cross reference and gave her a base offense level of 33. After a three-level downward adjustment for Moore's acceptance of responsibility, her recommended Guidelines range came to 108 to 121 months. The court varied downwards and sentenced her to 60 months.

## II.

On appeal, Moore challenges the procedural reasonableness of this sentence—in particular, the attempted-murder enhancement. As a matter of process, a district court must properly calculate the applicable Guidelines range, treat it as advisory, consider the § 3553(a) factors, refrain from

using clearly erroneous facts, and adequately explain the sentence chosen. *Gall v. United States*, 552 U.S. 38, 51 (2007). In reviewing the district court's Guidelines calculation, we assess its legal conclusions afresh. *United States v. LaLonde*, 509 F.3d 750, 763 (6th Cir. 2007). But we review findings of historical fact—"who did what, when or where, how or why"—for clear error. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018).

This case turns on the district court's calculation of the Guidelines range. If a defendant "used or possessed" the firearm at issue "in connection with the . . . attempted commission of another offense," U.S.S.G. § 2K2.1(c), the Guidelines direct us to apply the "offense guideline section" that expressly covers that offense, *id.* § 2X2.1(c). Here, that is § 2A2.1(a)(1), which adopts a base offense level of 33 if the "object of the offense would have constituted first degree murder." A person attempts first-degree murder if she "act[s] with a specific intent," *United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021), to kill "a human being with" premeditation and "malice aforethought," 18 U.S.C. § 1111(a); U.S.S.G. § 2A2.1 cmt. n.1. All of this prompts the one question on appeal: Did the district court correctly find that Moore acted with specific intent to kill Smith?

Two realities caution modesty in assessing the district court's answer. First is the setting, that this is a matter of sentencing, not a criminal trial. With a guilty plea secured, the government need prove only by a preponderance of the evidence that a sentencing enhancement applies. *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012).

Second is our position, that this is a matter of appellate review, not front-seat trial view. In this court, whether a defendant intended to kill someone else is about "who did what," *U.S. Bank*, 583 U.S. at 394, a quintessential question of fact, *see United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021). We review this question for clear error, which permits reversal only if we

have a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quotation omitted). By contrast, a court does not err if it makes a "plausible [factual finding] in light of the record viewed in its entirety," or picks one of "two permissible views of the evidence." *Id.* at 574.

Deferential review makes sense. The district court has a "ring-side perspective on the sentencing hearing" when it sentences a defendant in court, to her face, after hearing victims, family members, and witnesses testify. *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007). That live testimony turns into reams of cold transcripts when it reaches the court of appeals. Our different stations in this process require us to respect the district court's proximity to the facts and "experience over time in sentencing other individuals." *Id.*

Our cases frame what kinds of facts permit the inference that someone specifically intended to kill another person. They all agree, as an initial (and easy) matter, that pointing a gun at someone and pulling the trigger counts. *Grant*, 15 F.4th at 458; *Caston*, 851 F. App'x at 564 (collecting cases). But we have also held that aiming a gun at and shooting into a vehicle while other people are in it, such that the bullets could have struck them, establishes specific intent to kill. *Caston*, 851 F. App'x at 564; *United States v. Reverand*, No. 23-6078, 2025 WL 637438, at *5 (6th Cir. Feb. 27, 2025). Even shooting in a victim's direction "such that the shot could have hit" them suffices to establish an intent to kill. *United States v. James*, 575 F. App'x 588, 596–97 (6th Cir. 2014).

By those lights, the district court did not commit clear error. Officer Johnson testified that multiple witnesses and surveillance camera footage revealed Moore pacing back and forth with a loaded gun in her hand roughly ten to fifteen yards away from Smith's car. He recounted that the surveillance footage showed Moore walking just out of frame and then firing four shots—if not at

Smith then at least at his vehicle. Physical evidence—a photograph of Smith's car with a bullet hole on the front hood only two or three feet away from the driver's seat—confirmed the detective's account. On these facts, the district court plausibly inferred that Moore intended to kill Smith by firing four rounds toward the confined space in which he sat.

Moore's rebuttals fall short. She contends that the district court impermissibly inferred that she aimed to shoot Smith from testimony that she shot at his car. But we have frequently held that a court does not clearly err in finding that someone who shoots at a confined space where another person sits intends to kill them. *Caston*, 851 F. App'x at 564 (car); *Reverand*, 2025 WL 637438, at *5 (car); *United States v. Snowden*, 602 F. App'x 294, 297 (6th Cir. 2015) (bathroom); *United States v. Montgomery*, 412 F. App'x 856, 859–60 (6th Cir. 2011) (bedroom).

Moore turns to the reality that she fired in "quick succession" from "10–12 yards" away, and that Smith "was not injured." Appellant's Br. 20. But these facts do not leave us with a firm conviction that the district court erred. Even firing one shot at someone a hundred feet away, whether from a seasoned marksman or a first-time shooter, supports a finding of specific intent. *Grant*, 15 F.4th at 458. Nor is Smith's continued existence—that she didn't kill him—proof of Moore's innocence. A person's specific intent to kill does not manifest only when their aim is true. *See, e.g.*, *James*, 575 F. App'x at 590. Holding otherwise would hollow out the attempt doctrine.

Moore objects that she acted in self-defense because as she and a nearby Taco Bell employee told Officer Johnson, Smith threw a trash can at her windshield before, not after, the shooting. But Johnson also testified that they were wrong. Plus, the security footage showed Smith throwing the trash can after the shots were fired. Given two permissible stories, we must

5

respect that the district court may credit the narrative supported by the officer's recollection from his review of video evidence. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Last and least, Moore contends that the district court shifted the burden of proof onto her by remarking that its inference "could be countered by evidence of some kind"—like her own testimony. R.64 at 46. That contorts the transcript. The district court simply concluded that the government *had* met its burden to establish that Moore fired intentionally in Smith's direction. And it observed that Moore, who had adduced no independent evidence of her own, could have changed that narrative had she presented evidence at the sentencing hearing. Acknowledging that missed opportunity does not commit an error of law.

We affirm.